OPINION
{¶ 1} Defendant-appellant, Jonathan Baird, appeals his conviction in the Madison County Court of Common Pleas for felonious assault. We affirm the conviction.
 {¶ 2} During the early morning hours of May 29, 2003, appellant and Glenn Meade were involved in an altercation in which Meade suffered serious physical injury to his left eye. Although Meade's eye had been damaged in an accident when he was seven years old, the eye was still functional albeit limited, permitting Meade to see peripherally, to view objects up close, and to perceive light.
 {¶ 3} Earlier on May 28, 2003, the 66-year-old Meade was told that appellant had been on his property. Meade had problems with trespassers and theft so he went out looking for appellant in order to tell him to stop coming onto his property.
 {¶ 4} Driving around town after midnight, Meade found appellant outside the Satellite bar in Mount Sterling. Meade exited his truck and confronted appellant. The two argued verbally for a time. Meade then attempted to return to his vehicle. As Meade approached the truck door, appellant grabbed him by his shoulder, turned him around, and punched him in the left eye. Appellant punched Meade again in the face, causing him to fall. While on the ground, appellant kicked him.
 {¶ 5} At this point, Vivian Burns, who witnessed the altercation from her motor vehicle, drove towards the two men. She flashed her lights in an attempt to stop the fight. Appellant left the scene and Meade laid motionless on the street. Burns went home to notify the police. Meanwhile, appellant went to the Mount Sterling police station. There, appellant alleged he had been assaulted by Meade and only acted in self-defense. He prepared a written statement describing how Meade kicked him first and that appellant responded by kicking Meade in the face. Mount Sterling police held appellant until they could discover what had occurred.
 {¶ 6} As appellant reported the incident to the police, Meade was being taken to the hospital. After realizing that he could not receive proper treatment from Fayette County Memorial Hospital, Meade was transferred to Mount Carmel West. There, Dr. Timothy Quinn, an ophthalmologist, first examined Meade. Meade suffered serious damage to his left eye requiring three hours of surgery performed by Dr. Quinn. The globe was ruptured. After the incident, Meade was unable to see anything with his left eye. Dr. Quinn then referred Meade to Dr. Mark Lomeo, an ophthalmologist with an optical/retinal surgery specialty. Two weeks later, upon the consideration and recommendation of both doctors, Meade had the eye removed.
 {¶ 7} On June 13, 2003, appellant was indicted for felonious assault. His case was tried by a jury in August 2003. The jury returned a guilty verdict. On September 2, 2003, the court sentenced appellant to seven years imprisonment and ordered him to pay costs for prosecution and restitution.
 {¶ 8} Appellant now appeals the conviction raising three assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The trial court erred to the prejudice of defendant-appellant by submitting the case to the jury and rendering judgment on insufficient evidence. this error was preserved by defendant by moving for acquittal at the close of the state's case during trial."
 {¶ 11} In determining whether the evidence at trial was sufficient to support a conviction, an appellate court will "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} Appellant argues that there was insufficient evidence to convict him of felonious assault because the state did not show that there was serious physical harm to Meade or that appellant acted knowingly.
 {¶ 13} R.C. 2903.11(A) defines felonious assault, in pertinent part, as follows:
 {¶ 14} "No person shall knowingly * * * cause serious physical harm to another."
 {¶ 15} Appellant alleges that the state's expert testimony was insufficient to establish that Meade suffered serious physical injury. Specifically, appellant argues that Meade's preexisting eye damage made it difficult to assess the extent of injury caused by appellant's conduct.
 {¶ 16} R.C. 2901.01(A)(5) defines, in pertinent part, "serious physical harm to persons" to include the following:
 {¶ 17} "* * *
 {¶ 18} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 19} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 20} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 21} Based upon the record in this case, a rational trier of fact could easily find sufficient evidence proving beyond a reasonable doubt that Meade suffered serious physical harm. Meade's two treating doctors testified that he had a ruptured globe. The original determination as to whether the globe was ruptured was hindered by the fact that the "eye was completely full of blood." Meade was operated upon, during which the eye laceration was closed and blood evacuated from the anterior chamber. When an ultrasound of the eye was taken later, doctors discovered that Meade had hemorrhage in the back cavity of the eye, and that the retina and other structures were disorganized. The retinal damage was beyond repair and the eye could not be saved. The possibility of sympathetic ophthalmia[1]
affecting Meade's good eye combined with pain and discomfort resulting from hemorrhage in the injured eye led to the doctors' recommendation to have the injured eye removed.
 {¶ 22} In addition to the expert medical testimony describing the extent of his injury, Meade provided his own account of the harm suffered. Meade testified that an accident when he was seven impaired his direct vision. However, Meade "had peripheral vision, light perception, and [he] could see items up close to [his] left side." After his encounter with appellant, he could see "absolutely nothing." The loss of vision from the left eye was coupled with physical pain before the eye was removed. Explaining the severity of the pain, Meade testified, "[F]rom zero to ten, zero being the lightest, ten being the worst pain, I had a lot of tens during those two weeks."
 {¶ 23} In the following exchange with the court, Dr. Lomeo further discussed the connection between appellant's actions and Meade's injury:
 {¶ 24} "Q: Now, do you have an opinion within the realm of reasonable medical probability whether or not there was a causal connection between the assault that was described to you in the history and the diagnosis that you made as a result of your examination? Do you have an opinion as to whether there was a causal connection?
 {¶ 25} "A: Absolutely. Without the trauma he would not have been in that situation, would not have had the hemorrhage, would not have had the retina detachment."
 {¶ 26} This testimony was consistent with that of Dr. Quinn who first examined Meade. Dr. Quinn stated, "Based on history of having been struck in the eye with a fist and having a blunt type of surgery, expulsive rather than incisional-type injury, it's very consistent with him having a ruptured globe secondary to a fist to the eye." The record shows there was overwhelming evidence for a rational trier of fact to find beyond a reasonable doubt that Meade suffered serious physical harm.
 {¶ 27} Appellant also argues there was insufficient evidence to establish that he "knowingly" caused Meade's injury. Appellant's argument is without merit.
 {¶ 28} A person acts "knowingly" when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C.2901.22(B). Therefore, the state must demonstrate that appellant was aware that his actions would probably cause serious physical harm to the victim.
 {¶ 29} Again, the record demonstrates there was sufficient evidence to support a finding that appellant was aware of the probability that punching Meade's face and kicking him while on the ground would cause serious physical harm. While Meade's actions during the confrontation are disputed, appellant, a self-described "pretty good-sized" man, testified that he "hit him in the face" and then "punched him again and he fell." With Meade on the ground, appellant alleged that Meade grabbed his pant legs at which point, appellant "stepped back and * * * kicked him."
 {¶ 30} Contrary to appellant's alleged self-defense motive, no one outside of appellant himself claimed that Meade attacked appellant. Appellant's oral and written statements to police provided inconsistent testimony as to Meade's actions, at times omitting whether Meade even threw a punch.
 {¶ 31} Appellant, a 23-year-old man, acknowledged that he "probably did hit [Meade] pretty hard." Appellant argues that he did not "want [Meade] to be hurt," but despite appellant's alleged purpose, he knew that Meade would probably receive serious physical harm when he punched Meade in the face twice and kicked him while he was on the ground. Any rational trier of fact could find the required element that appellant was aware of the probability that his actions would cause serious physical harm.
 {¶ 32} Viewing the evidence in a light most favorable to the prosecution, we find there was sufficient evidence for the jury to find all the elements of felonious assault beyond a reasonable doubt to convict appellant. Appellant's first assignment of error is overruled.
 {¶ 33} Assignment of Error No. 2:
 {¶ 34} "The defendant was prejudicially harmed by ineffective assistance of counsel during the trial proceedings in matters of such importance and relevance as to rise to the level of plain error requiring reversal and remand by the appellate court."
 {¶ 35} To establish a claim of ineffective assistance of counsel, appellant must show that his trial attorney's performance was both deficient and prejudicial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Appellant must show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. Appellant must further show that he was prejudiced by this deficient performance. Id. at 687. Appellant demonstrates prejudice when, but for counsel's errors, a reasonable probability exists that the result of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136, 143. A strong presumption exists that the licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. Id. at 142, quoting Strickland, at 689.
 {¶ 36} Appellant argues his trial counsel was ineffective because he failed to: 1) obtain expert testimony related to the loss of Meade's eye; 2) present medical evidence of panic attacks from which appellant allegedly suffers; and 3) object to the prosecutor's leading questions and alleged harassment of appellant during cross-examination.
 {¶ 37} Upon review of the record, we find no merit to appellant's assertions that he received ineffective assistance of counsel. Appellant alleges his counsel was ineffective by failing to present expert testimony to discuss whether victim's eye would have been removed had it not been previously damaged. The decision whether to call an expert witness is a matter of trial strategy. See State v. Thompson (1987), 33 Ohio St.3d 1, 10-11. An attorney's failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. See State v. Hartman, 93 Ohio St.3d 274, 299,2001-Ohio-1580.
 {¶ 38} The trial counsel's decision to rely on cross-examination should be viewed as a legitimate, tactical decision particularly since expert testimony discussing whether the result of such trauma to someone with an eye that had not been previously injured may not necessarily have proven favorable for appellant. Additionally, resolving this issue in appellant's favor would be purely speculative. "Nothing in the record indicates what kind of testimony an * * * expert could have provided. Establishing [an expert's conclusions] would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." State v. Madrigal, 87 Ohio St.3d 378,390-91, 2000-Ohio-448 (rejecting claim of ineffectiveness for counsel's failure to utilize an expert on eyewitness identification). Thus, we reject appellant's claim that failure to present expert testimony concerning the probable effect of appellant's actions to a person with a healthy eye constituted ineffective assistance of counsel.
 {¶ 39} Furthermore, trial counsel's decision not to present testimony regarding appellant's panic attacks should also be viewed as a strategic decision. Instead of presenting medical evidence describing whether appellant suffered from a mental disorder, counsel attempted to persuade the jury that appellant's actions were done in self-defense. The record reflects counsel's attempts to show Meade provoked the situation and that appellant feared Meade might try to shoot him. Counsel's decision to argue appellant's case in this fashion, although ultimately unsuccessful, was clearly a matter of trial strategy. Thus, such tactical decision will not be considered as ineffectiveness of counsel.
 {¶ 40} Appellant's third argument, that trial counsel was ineffective for failing to object to the prosecutor's leading questions during direct examination of Meade, also lacks merit. It is within the trial court's discretion to allow leading questions on direct examination. See Staff Note, Evid.R. 611(C);State v. D'Ambrosio, 67 Ohio St.3d, 185, 190, 1993-Ohio-170. The record reveals that many of the prosecutor's alleged leading questions were merely questions directing Meade's attention to the topic of testimony, which is proper. Additionally, it may have been a matter of trial strategy to choose not to object in order to prevent Meade from answering a rephrased question similarly. Regardless of counsel's reasons, appellant has not demonstrated that appellant was prejudiced by this questioning of Meade. Notably, the testimony of Vivian Burns provides additional testimony consistent with Meade's account.
 {¶ 41} Appellant's representation was also not deficient as a result of counsel's failing to object to the prosecution's cross-examination of appellant. Despite appellant's assertions that the cross-examination was "grueling," the prosecution properly impeached appellant's credibility by asking him to explain the variations within his own account of events. See Evid.R. 607. Appellant's statement to police appeared inconsistent with his testimony at trial. Appellant asserted that he acted in self-defense but when appellant originally reported the altercation to the police, he did not report that Meade allegedly punched him in the face twice. Trial counsel acted competently by not objecting to the state's proper form of cross-examination.
 {¶ 42} Appellant has not demonstrated that his trial counsel's conduct fell below an objective standard of reasonableness or that he suffered prejudice as a result. Accordingly, appellant's second assignment of error is overruled.
 {¶ 43} Assignment of Error No. 3:
 {¶ 44} "The trial court erred in sentencing defendant to the near maximum stated in the guidelines and the sentence should be reduced to prevent manifest injustice to defendant."
 {¶ 45} Appellant argues against the imposition of a seven-year sentence for his felonious assault conviction, a second-degree felony.[2] However, we find the trial court did follow proper sentencing procedure and was well within its discretion in imposing its sentence.
 {¶ 46} R.C. 2929.14(A)(2) states:
 {¶ 47} "For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years."
 {¶ 48} R.C. 2929.14(B) provides as follows:
 {¶ 49} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless * * * the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 50} "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasissic.) State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110, syllabus. However, the Ohio Supreme Court has recently held that "when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing." State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph two of the syllabus.
 {¶ 51} Appellant was sentenced to a seven-year prison term for the felonious assault conviction. Appellant received a sentence of five years greater than the minimum sentence, but one year less than the maximum.
 {¶ 52} A thorough review of the record reveals that the trial court stated both its findings and reasons for its findings before it imposed the nonminimum sentence at the sentencing hearing. The trial court found that the shortest prison term would demean the seriousness of the crime and would not adequately protect the public from future crime by appellant.
 {¶ 53} We find that the trial court fully complied with R.C.2929.14(B) and relevant case law when it made these findings on the record. Appellant's third assignment of error is overruled.
 {¶ 54} Judgment affirmed.
Powell and Walsh, JJ., concur.
[1] Sympathetic ophthalmia is a potentially blinding inflammatory process in which severe trauma or laceration to one eye leaves the healthy, normal eye susceptible to attacks by the autoimmune process.
[2] We find both parties' arguments as to whether appellant committed the worst form of the offense as largely misplaced. Such discussion is only pertinent insofar as the factor was used to determine the seriousness of the crime per R.C. 2929.14(B). The imposition of the "near maximum" sentence need only conform to the procedure required for the imposition of a nonminimum sentence.