JOURNAL ENTRY AND OPINION
{¶ 1} In June 2003, Peter Kenney, alleging ineffective assistance of appellate counsel, sought to reopen this court's judgment in State v. Kenney,[1] in which we affirmed his convictions for aggravated murder and kidnapping. In September 2003, the State filed its brief in opposition. We deny the application.
 {¶ 2} In order to establish a claim of ineffective assistance of appellate counsel, Kenny must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced the defense.[2] In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"[3]
 {¶ 3} Specifically, on claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."[4] Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen.[5]
 {¶ 4} Moreover, even if a defendant establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, he must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
 {¶ 5} In the present case, Kenney's arguments are not well taken. In his first assignment of error, he asserts his appellate counsel should have challenged the trial judge's improper limitation of the cross-examination of a critical prosecution witness prohibiting the use of certain parts of her police statement.
 {¶ 6} The victim was shot execution style in a backyard on West 95th Street in Cleveland in the very early hours of April 17, 2001. Although witnesses saw or heard the shooting, they could not identify the shooter. The basis of the case against Kenney was his admission to several people at different times that he killed the victim. During direct examination, Lynette Schirger, testified that on the morning of the shooting Kenney said that he killed the victim, the victim deserved it, and that the "kid was face down in a mud hole and that he was stripped down to his boxers."[6]
 {¶ 7} During cross-examination, the judge inspected Ms. Schirger's police statement for material inconsistencies which defense counsel could use for impeachment and allowed some. Although the police statement is not part of the record, the transcript reveals that the police asked: Was anything said about the condition of the body? Ms. Schirger answered "No."[7]
The judge ruled that this was not a material inconsistency with her testimony and prohibited defense counsel from using the statement for impeachment purposes on this point, although she specifically ruled that counsel could cross-examine Ms. Schirger generally on this matter. In fact, Kenney's counsel asked: "At anytime did you tell the police that Shorty [Kenney] did not describe the condition of the body?" Ms. Schirger answered: "He didn't specifically describe the position of the body, just said he was in a mud hole where he belongs."[8]
 {¶ 8} Evidentiary rulings, such as this issue, are within the trial judge's discretion. To prevail, appellate counsel must establish that the ruling was an abuse of discretion, that it was capricious, arbitrary or unreasonable.[9] In the present case, the broadness of the police officer's question with its corresponding susceptibility of being interpreted in various ways, such as the distinction between "condition" and "position," would make it difficult to argue that the judge's ruling was an abuse of discretion. In fact, the judge indicated that the question and answer were not specific enough. Moreover, a review of the case law would further tend to deter an appellate counsel from pressing this argument.
 {¶ 9} The court of appeals in Garcia noted that "it is natural that certain details that were omitted from a witness's previous statements may be brought out for the first time at trial, and it is not appropriate to construe such omissions to be inconsistencies."[10] In State v. Steele, we rejected a very similar argument because defense counsel had a full opportunity to challenge the credibility of the witness, just as in the present case. We also stressed that we have consistently measured the alleged inconsistencies to determine whether they were substantial; if they were not, then this court has held that any error was harmless error.[11] Again, in State v.Hartford we rejected an assignment of error arguing an improper limitation of cross-examination because the judge did not find any material inconsistencies between a witness's prior police statement and her testimony. As in Steele, we relied on counsel's efforts at impeachment during cross-examination without the prior statement. This court also stated: "Certain details related to the police may naturally not be brought up on direct examination and some details omitted from a witness statement may naturally crop up for the first time at trial, and it is not appropriate to consider the omission of such details to be `inconsistencies.'"[12] Thus, appellate counsel in the exercise of reasonable professional judgment could have concluded that this assignment of error bore too little chance of success to raise.[13]
 {¶ 10} In Kenney's second assignment of error, he claims the trial judge erred when she refused to remove a juror and replace her with an alternate, and deprived him of an impartial jury. During the trial one of the jurors noticed that her boyfriend's cousin was sitting on the defendant's side of the courtroom. Although Kenney, through his attorneys, alleges that the juror was intimidated by the cousin's presence, the record reveals that juror said that she was "nervous that he is associated with these people."[14] In fact, she denied repeatedly that she had any type of fear or intimidation arising from the cousin's presence. She admitted she shared her concern with several other jurors before bringing the matter to the court's attention, but stated that the cousin's presence would not impede her ability to serve as a juror and would not in any way influence her deliberations. The other jurors with whom she talked also said that the incident would not affect their impartiality or their deliberations. After the initial inquiry, counsel for the State and the defense said that there was not a problem.
 {¶ 11} Subsequently, the cousin tried to contact the juror, but she did not talk to him, and she properly brought the matter to the court's attention. During the judge's inquiry the juror affirmed that she would be impartial, that the incident would not affect her deliberations, and that she was not afraid. Defense counsel asked that the juror be removed "out of an abundance of caution."[15] However, the judge denied the request because the juror had "indicated in every way she can be fair and she hasn't had any contact with that person and she has followed the instructions of court very closely. She hasn't even discussed it with her boyfriend."[16] Given the record, the trial judge did not abuse her discretion in allowing the juror to remain. Appellate counsel properly rejected this argument.
 {¶ 12} The court will consider Kenney's third, fourth, and fifth assignments of error collectively: That the trial judge erred in denying a motion for a continuance which prevented his counsel from properly investigating exculpatory evidence; that the State deprived him of his right to a fair trial and due process of law by failing to provide timely disclosure of exculpatory evidence; that Kenney was deprived of his right to effective assistance of trial counsel by the court's denial of the continuance and the State's withholding of exculpatory evidence; these actions prevented defense counsel from doing their job properly.
 {¶ 13} Kenney presented these very issues to the trial judge in his postconviction relief petition. We further note that he supported his petition with the affidavit of one of the witnesses with exculpatory evidence,[17] a lengthy affidavit from one of Kenney's trial counsel and Kenney's own affidavit. The trial judge denied the postconviction relief petition. She ruled that because these issues could have been raised on appeal, they are barred by res judicata. Then she ruled on each of the issues on their merits.
 {¶ 14} She concluded there was no abuse of discretion in denying the continuance because Kenney had been granted several pretrials and one continuance, because his counsel was not particularly diligent in interviewing Finley or in seeking a second continuance, and most importantly, because there was never any claim that Ruiz would have exonerated Kenney. She further concluded that the State did not withhold exculpatory evidence relating to Finley or Ruiz because Kenney's counsel had discovered it through other means, and thus, there was no prejudice. Finley's testimony would have been inadmissible hearsay and, again, it is not certain that Ruiz would have testified and would have exonerated Kenney.
 {¶ 15} In the postconviction relief petition, Kenney also asserted that the trial judge withheld exculpatory evidence in the form of photo arrays shown to the witnesses. She ruled that the State had fulfilled its duty by disclosing the photo arrays on the eve of trial. More importantly, there was no prejudice. Two of the four witnesses testified that they could not identify the shooter, and the other two knew Kenney. Therefore, there could be no prejudice relating to the photo arrays. Because the claim of ineffective assistance of trial counsel was dependent upon the first two claims, the fact that the first two claims were unpersuasive rendered the third claim unpersuasive.[18]
 {¶ 16} The very reasoning of the judge, ruling that there was no error and no prejudice on these issues, establishes that appellate counsel, in the exercise of professional judgment, could reject these arguments. Furthermore, res judicata properly bars these arguments. See, generally, State v. Perry.[19]
Res judicata prevents repeated attacks on a final judgment and applies to all issues which were or might have been litigated.
 {¶ 17} In Murnahan, the supreme court ruled that res judicata may bar a claim of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine unjust. In the present case the trial judge on an expanded record fully considered each of the issues on their merits and rejected them, and this court of appeals affirmed that judgment. Under such circumstances, it is not unjust to rule that res judicata bars the repeated litigation of these issues.
 {¶ 18} Finally, Kenney raises two other issues: (1) appellate counsel was ineffective in failing to include the record from the juvenile court bindover proceedings, and (2) he was ineffective for failing to file a motion for reconsideration under App.R. 26(A). First, we note that these arguments may be beyond the scope of an application to reopen pursuant to App.R. 26(B). Subsection (2), paragraph c specifies that the basis for an application to reopen shall be assignments of error which appellate counsel did not argue or did not argue properly. Nevertheless, these issues are not persuasive, because Kenney does not establish prejudice.
 {¶ 19} In his motion for reconsideration argument, he submits that this court misinterpreted the testimony of Daniel Fox in its opinion. Fox had originally told the police that Kenney had admitted to him on the morning of the shooting that he had killed the victim. At trial Fox recanted these statements, but the trial judge allowed the State of Ohio to impeach him with his statement. Kenney maintains that, in deciding the manifest weight of the evidence argument, this court relied upon Fox as testifying that Kenney admitted to killing the victim. Assuming, arguendo, the truth of these allegations, deleting any reference to Fox's testimony would not have changed our ruling on that assignment of error. Two witnesses positively testified that Kenney admitted to them that he killed the victim. That evidence was sufficient to support the verdict against a claim of manifest weight.
 {¶ 20} Similarly, including the record from the juvenile court bindover proceedings would not have changed the outcome of the appeal. Kenney asserts that his appellate counsel could have bolstered the manifest weight argument by highlighting several differences between the testimony at the bindover hearing and at the trial. The cited discrepancy, whether the witnesses originally said one of the perpetrators was Hispanic or white, is of tertiary value and would not have changed the ruling on the manifest weight argument. Kenney also submits that the failure to include the bindover transcript prevented this court from reviewing the juvenile court's decision to transfer jurisdiction of his case. However, he does not argue that the juvenile court erred in that decision and thus, does not show prejudice.
 {¶ 21} Accordingly, this court denies the application to reopen.
Colleen Conway Cooney and Anthony O. Calabrese Jr., JJ., Concur.
[1] Cuyahoga App. No. 80653, 2003-Ohio-1501.
[2] Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258.
[3] Strickland, 104 S.Ct. at 2065.
[4] Jones v. Barnes (1983), 463 U.S. 745, 77 L.Ed.2d 987,103 S.Ct. 3308, 3313.
[5] 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.
[6] Tr. at 420.
[7] Tr. at 428.
[8] Tr. at 459.
[9] State v. Garcia, Hancock App. No. 5-01-12, 2001-Ohio-2262; O'Brien v. Angley (1980), 63 Ohio St.2d 159,407 N.E.2d 490; State v. Lundy (1987), 41 Ohio App.3d 163,535 N.E.2d 664; and State v. Clay (1972), 29 Ohio App.2d 206,280 N.E.2d 385.
[10] 2001-Ohio-2262 at 4.
[11] State v. Steele (Mar. 1, 1990), Cuyahoga App. No. 58234 at 10.
[12] State v. Hartford (1984), 21 Ohio App.3d 29, 31,486 N.E.2d 131.
[13] See, also, State v. Armington (Dec. 20, 1988), Lake App. No. 12-015 and State v. Clay (1972), 29 Ohio App.2d 206, in which the courts again rejected similar arguments as the one sub judice.
[14] Tr. at 550.
[15] Tr. at 592.
[16] Tr. at 596.
[17] David Finley stated in his affidavit that a Mr. Ruiz admitted involvement in the killing and that he told both a detective and Kenney's defense counsel about this conversation. The eyewitnesses testified that three individuals were present when the victim was shot.
[18] In State v. Kenney, Cuyahoga App. Nos. 81752 and 81879, 2003-Ohio-2046 this court affirmed the decision of the trial court on the postconviction relief petition solely on the basis of res judicata.
[19] (1967), 10 Ohio St.2d 175, 226 N.E.2d 104.