The STATE of Ohio, Appellee,

v.

CURRAN, Appellant.

[Cite as *State v. Curran*, 166 Ohio App.3d 206, 2006-Ohio-773.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2005 CA 22.

Decided Feb. 17, 2006.

208

Stephen Schumaker, Clark County Prosecuting Attorney, and Darnell E. Carter, Assistant Prosecuting Attorney, for appellee.

Brandon D. Marlow, for appellant.

———

WOLFF, Judge.

{¶ 1} Brian Curran was found guilty by a jury in the Clark County Court of Common Pleas of one count of felonious assault. He was sentenced to seven years in prison. Curran appeals from his conviction.

{¶ 2} The state's evidence at trial established the following version of events. Curran's wife, Tonya, was also indicted as a result of these events, and the two were tried together.

{¶ 3} On the evening of November 12, 2004, Jodi Smith, John Craig Carter, Heidi Thrasher, and Nick Barney went to the Players' Club to celebrate Smith's birthday. While there, Thrasher met Deidra Andrews in the restroom. Andrews appeared to be upset, and she explained that her mother's boyfriend had been hitting on her. Andrews asked Thrasher for a ride in order to avoid her mother's boyfriend, and Thrasher agreed. Thus, the four friends set out from the club, along with Andrews. Andrews gave them directions to a trailer park where her mother allegedly lived.

{¶ 4} There are some minor discrepancies in the accounts of the state's witnesses from the time they arrived at the trailer park, but they consistently testified that after Andrews approached the trailer to which she had directed them, Brian and Tonya Curran emerged from the trailer, and a fight ensued. Smith, Carter, Thrasher, and Barney had no prior relationship with Andrews or the Currans. During this altercation, Barney wrestled with Brian Curran, and when Barney pinned Brian to the ground, Tonya hit Barney about the head. Thrasher was either struck with a metal bucket or was pushed or fell into the doorframe of the car, sustaining serious injuries to her face and the loss of teeth. As the confrontation between Barney and Brian Curran was breaking up, Brian lunged toward Carter, who was walking toward the car. Carter was stabbed several times with a kitchen knife, sustaining serious injuries. The four friends eventually managed to get back into their car. They then drove to a nearby fire station for medical assistance. The kitchen knife was later recovered outside the trailer.

{¶ 5} The defense presented the testimony of Tonya Curran. According to her account, after Andrews entered their trailer, three other people burst in armed with beer bottles. These people dragged Brian and her outside and beat them. Tonya admitted throwing a brass bucket at Thrasher during the melee, but claimed that she had acted in self-defense and in defense of her husband. Brian Curran did not testify.

{¶ 6} Brian Curran was indicted on two counts of felonious assault, one based on causing serious physical harm (R.C. 2903.11(A)(1)) and the other based on causing physical harm with a deadly weapon (R.C. 2903.11(A)(2)). He was tried by a jury in February 2005 and was found guilty of one count of felonious assault (serious physical harm). He was acquitted on the count related to having a deadly weapon.

{¶ 7} Curran raises four assignments of error on appeal.

{¶ 8} I. "The trial court abused its discretion by failing to remedy the separation of witnesses order violation."

{¶ 9} Curran claims that he was prejudiced by the fact that the complaining witnesses—Smith, Thrasher, Carter, and Barney—had talked with one another about the events in question before and during trial and had the opportunity to review one another's earlier statements to sheriff's deputies. He claims that this conduct violated the court's order for the separation of witnesses, although the witnesses did not actually hear one another's trial testimony. Curran asserts that the trial court did not take adequate measures to address this violation of its separation order, namely declaring a mistrial.

{¶ 10} At the beginning of the trial, the trial court ordered the witnesses excluded from the courtroom so that they would not hear one another's testimony, pursuant to Evid.R. 615. However, during the trial, the complaining witnesses admitted that they had been sitting together in the courthouse, apparently with a victim's advocate, and that they had each had the opportunity to read their own previous statements to the sheriff's deputies, as well as the statements of the others. They denied, however, that they had actually carefully read any of the other complaining witnesses' statements. Barney also stated that he had talked with deputies "in general" about the night's events and that other victims had been part of those conversations. The witnesses denied, however, that they had talked about their trial testimony. The defendants moved for a mistrial on the basis that the complaining witnesses had been discussing their testimony in violation of the separation order. They did not request that the trial court address this issue in any other way.

{¶ 11} The trial court denied the defendants' request for a mistrial, noting that the witnesses had been prohibited from discussing *their testimony* and that it was not apparent that they had done so, although they had discussed the events in question. The court did find that the witnesses had come "dangerously close" to violating its order. It concluded that there had been no prejudice to the defense, however, because the witnesses had readily admitted to these conversations and to looking at one another's statements, and they had been thoroughly cross-examined about the possible effect of this conduct on their testimony.

{¶ 12} The trial court viewed the witnesses' testimony and how these events transpired, and thus was in the best position to judge the credibility of the witnesses. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. That being the case, we cannot conclude that the court abused its discretion in concluding that the witnesses' contact at the courthouse and possible familiarity with one another's earlier statements to the sheriff's deputies did not prejudice Curran. As the court pointed out, there were discrepancies between the witnesses' own statements to the deputies at the time of the offense and their testimony at trial, and these discrepancies were subject to cross-examination. Moreover, the witnesses' admitted intoxication at the time of their encounter with the Currans and, in the case of Thrasher and Carter, their extensive injuries provided other possible explanations for the inconsistencies in their stories and for their assertions that they remembered more about the events at the time of trial than they did at the time of their previous statements. Moreover, the complaining witnesses were not entirely consistent in their accounts by the time of trial, which undercuts the Currans' suggestions that the witnesses had collaborated to ensure their convictions. Therefore, the court's handling of the matter was not unreasonable.

{¶ 13} The first assignment of error is overruled.

{¶ 14} II. "The trial court abused its discretion in failing to find Curran demonstrated a particularized need in requesting a copy of the grand jury transcripts."

{¶ 15} Curran claims that he had established a particularized need for the grand jury testimony of Carter and Thrasher based on defense counsel's notes regarding these witnesses' testimony before the grand jury, inconsistencies between those notes and the testimony offered at trial, and Carter's admission that he had remembered more about the event over time as he recovered from his injuries. (The grand jury testimony had not been transcribed as of the time of trial.) The trial court refused to provide Curran with the grand jury testimony.

{¶ 16} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer* (1981), 66 Ohio St.2d 139, 20 O.O.3d 157, 420 N.E.2d 982, syllabus, citing *State v. Patterson* (1971), 28 Ohio St.2d 181, 57 O.O.2d 422, 277 N.E.2d 201, paragraph three of the syllabus. The showing of "particularized need" is a threshold requirement, and it requires a defendant to make a showing that it is probable that the defendant will not obtain a "fair adjudication of the allegations placed in issue by the prosecution's witness" without disclosure of that witness's grand jury testimony. *State v. Hernandez* (Mar. 29, 1991), Columbiana App. No. 87–C–56, 1991 WL 44362. Impeachment may be a proper basis for disclosure of grand jury testimony, but that purpose alone is not sufficient. Id. In conjunction with the impeachment purpose, the particularized-need standard, as defined above, must still be met. Id. The trial court, in its discretion, determines whether the defendant has shown a particularized need for the production of grand jury proceedings. *Greer*, 66 Ohio St.2d at 148, 20 O.O.3d 157, 420 N.E.2d 982.

{¶ 17} It is natural and understandable that certain details that were omitted from a witness's previous statements may be brought out for the first time at trial. *State v. Kenney*, Cuyahoga App. No. 80653, 2004-Ohio-972, 2004 WL 395878; *State v. Garcia* (Sept. 10, 2001), Hancock App. No. 5–01–12, 2001-Ohio-2262, 2001 WL 1031459. It is not appropriate to construe such omissions to be inconsistencies. *State v. Hartford* (1984), 21 Ohio App.3d 29, 31, 21 OBR 30, 486 N.E.2d 131; *Kenney; Garcia*, supra. Only material omissions may be taken as inconsistencies. *Hartford*, 21 Ohio App.3d at 31, 21 OBR 30, 486 N.E.2d 131. Again, it is within the trial court's discretion to determine whether the omission is

material and whether it is inconsistent with the witness's trial testimony. *State v. Clay*, 29 Ohio App.2d 206, 212, 58 O.O.2d 364, 280 N.E.2d 385.

{¶ 18} In his motion for the grand jury testimony, Curran pointed out that Carter had admitted that his testimony had not been as detailed before the grand jury as it had been at trial, attributing this in part to his release from the hospital shortly before appearing before the grand jury. Curran's attorney stated: "It's like the guy that caught * * * [t]he fish[;] the first time it was this big. The next time he tells the story it was this big. The next time he tells the story it's this big. That's what we're faced with here." Likewise, in his brief, Curran asserts very generally that he wanted to delve into whether Carter or Thrasher had changed their stories over time because they had had opportunities to discuss the incident with one another.

{¶ 19} The trial court concluded that Curran and his wife had not shown a particularized need for the grand jury testimony, and therefore it denied their motions to review that testimony. We agree with the trial court that Curran had failed to demonstrate a particularized need for the grand jury testimony of Carter and Thrasher. The argument in his brief supports the conclusion that he was merely looking for inconsistencies and had not identified a particular conflict in the testimony that would have made a "fair adjudication of the allegations placed in issue by the prosecution's witness[es]" impossible without the grand jury testimony. Under these circumstances, the trial court did not abuse its discretion in concluding that Curran was not entitled to the grand jury testimony.

{¶ 20} The second assignment of error is overruled.

{¶ 21} III. "The guilty verdict on Count Two was against the manifest weight of the evidence."

{¶ 22} Curran claims that his conviction was against the manifest weight of the evidence. Specifically, he argues that his conviction for felonious assault in violation of R.C. 2903.11(A)(1), based on causing serious physical harm, was inconsistent with his acquittal for felonious assault in violation of R.C. 2903.11(A)(2), which required the use of a deadly weapon, because it was undisputed that Carter suffered stab wounds to the chest and abdomen.

{¶ 23} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. A judgment should be reversed as being against the

manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 24} It is well established that each count of an indictment charges a complete offense; the separate counts of an indictment are not interdependent but are, and necessarily must be, each complete in itself. *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 446, 683 N.E.2d 1112. "[A]n inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Id; *State v. Brown* (1984), 12 Ohio St.3d 147, 12 OBR 186, 465 N.E.2d 889 (holding that the jury's finding that the defendant was insane as to two charges but sane as to the others did not require the reversal of the convictions).

{¶ 25} Because the separate counts in the indictment were not interdependent, Curran's conviction on one count of felonious assault and acquittal on another did not demonstrate, in itself, that his conviction was against the manifest weight of the evidence. Moreover, the witnesses' testimonies established that Curran had stabbed Carter moments after breaking from his altercation with Barney and that Carter's injuries were very serious, thereby establishing felonious assault in violation of R.C. 2903.11(A)(1). There was no manifest miscarriage of justice in Curran's conviction, and the conviction was not against the manifest weight of the evidence.

{¶ 26} The third assignment of error is overruled.

{¶ 27} IV. "The imposition of a seven-year prison term is contrary to law and an abuse of discretion."

{¶ 28} Curran asserts that the trial court erred in failing to analyze all of the sentencing factors set forth under R.C. 2929.12. He also claims that the trial court improperly considered certain factors in imposing a sentence greater than the minimum sentence for his offense. Finally, Curran contends that his sentence was disproportionate to the sentences imposed in similar cases.

{¶ 29} First, we will address whether the trial court's discussion of the factors set forth at R.C. 2929.12 was adequate. "[U]pon a record that is silent with respect to the trial court's consideration of the factors set forth in R.C. 2929.12, a presumption arises that the trial court complied with its duty to consider those factors." *State v. Smith,* Montgomery App. No. 19419, 2003-Ohio-1854, 2003 WL 1857444, ¶ 12. To overcome that presumption, a defendant must demonstrate that his sentence is "strikingly inconsistent" with the applicable factors of R.C. 2929.12. Id.

{¶ 30} The trial court discussed its consideration of the statutory factors set forth at R.C. 2929.12(B) and (C), which weigh on the seriousness of the offense.

Of these factors, it specifically mentioned the seriousness of Carter's injuries as making the conduct more serious than the conduct normally constituting the offense. The court found none of the factors tending to show that the offense was less serious than the conduct normally constituting the offense. The court did mention, however, that it had considered whether there had been some degree of provocation, but it ultimately refused to consider provocation as a factor making the offense less serious because the provocation, if any, was not serious provocation and had not justified the use of deadly force.

{¶ 31} With respect to recidivism, the court considered the factors set forth at R.C. 2929.12(D) and (E). It noted Curran's one prior conviction for receiving stolen property and stated that it could not determine whether Curran had any genuine remorse. The court also noted that although Curran had not been convicted of an offense for many years, he had acknowledged repeated drug use in the course of the proceedings. Thus, the court found that it could not "in good faith make a finding that he's led a law-abiding life for a significant number of years." The court expressly found that a minimum sentence would demean the seriousness of Curran's conduct and would not adequately protect the public from future crime by him, in accordance with R.C. 2929.14(B)(2).

{¶ 32} Curran claims that his sentence was contrary to law because the trial court did not adequately analyze the seriousness and recidivism factors. However, as noted above, the trial court was not required to discuss every statutory factor. *Smith*, supra. Moreover, the court is not required to find a majority of the factors or any particular number of factors in order to impose a sentence greater than the minimum sentence. The court merely needs to demonstrate thoughtful consideration of the sentence, including pertinent statutory factors. In our view, the trial court's analysis was sufficient.

{¶ 33} Curran also faults the trial court for considering "three additional factors"—beyond the statutory factors—in imposing its sentence. These factors were the use of a deadly weapon, stabbing the victim four times, and the fact that the victim "was very close to death." This was not improper. The trial court is expressly authorized to consider, in addition to the enumerated factors, "any other factors that are relevant to achieving [the] purposes and principles of sentencing." R.C. 2929.12(A). Furthermore, these factors were closely tied to the trial court's discussion of the seriousness of the victim's injuries, which was an expressly permissible consideration. R.C. 2929.12(B)(2). As there was no dispute that Curran had stabbed Carter with a kitchen knife and that Carter had been very close to death, the trial court's consideration of the use of a deadly weapon was not prohibited by the jury's finding that Curran was not guilty of the count of felonious assault arising out of the use of a deadly weapon.

{¶ 34} Finally, Curran claims that his sentence was disproportionate to other sentences resulting from similar conduct. Curran did not object to the sentence on this basis in the trial court. If a defendant intends to argue that the sentence imposed in a particular case is so inconsistent with sentences imposed for similar offenses committed by similar offenders as to be disproportionately harsh, he must object or otherwise raise that issue in the trial court, affording that court an opportunity to correct the error. *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372, ¶ 53. Having failed to do so, Curran has waived all but plain error. No plain error has been demonstrated here.

{¶ 35} Furthermore, a defendant who claims that his sentence is inconsistent with sentences given in other cases bears the burden of providing the court with sentences imposed for similar crimes by similar offenders that validate the claim of inconsistency. *State v. Friesen*, Crawford App. No. 3–05–06, 2005-Ohio-5760, 2005 WL 2840722. The cases cited by Curran fail to do so. Three of the cases did not involve life-threatening injuries. *State v. Culpepper*, Montgomery App. No. 19077, 2003-Ohio-2395, 2003 WL 21060738 (four-year sentence); *State v. Frazier*, Lake App. Nos. 2001–L–052, 2002–L–003, 2002-Ohio-7132, 2002 WL 31862656 (four-year sentence); and *State v. Parker*, Washington App. No. 03CA43, 2004-Ohio-1739, 2004 WL 728249 (five-year sentence). In the fourth case, *State v. Dunn*, Allen App. No. 1–02–98, 2003-Ohio-4353, 2003 WL 21957581, the defendant received a six-year sentence for hiring two men to inflict a beating that left the victim in a coma for eight days. Although the seriousness of the injury in *Dunn* was comparable to the case herein, we cannot say that the six-year sentence imposed upon Dunn and the seven-year sentence imposed upon Curran are so incongruous as to establish that Curran's sentence was disproportionately harsh. Thus, Curran has failed to demonstrate that his sentence was inconsistent with sentences imposed for similar crimes by similar offenders.

{¶ 36} The fourth assignment of error is overruled.

{¶ 37} The judgment of the trial court is affirmed.

Judgment affirmed.

GRADY, P.J., and BROGAN, J., concur.