OPINION
{¶ 1} Tonya Curran was found guilty by a jury in the Clark County Court of Common Pleas of one count of felonious assault. She was sentenced to four years in prison. Curran appeals from her conviction.
 {¶ 2} The state's evidence at trial established the following version of events. We note that Curran's husband, Brian, was also indicted as a result of these events, and the two were tried together.
 {¶ 3} On the evening of November 12, 2004, Jodi Smith, John Craig Carter, Heidi Thrasher, and Nick Barney went to the Players' Club to celebrate Smith's birthday. While there, Thrasher met Deidra Andrews in the restroom. Andrews appeared to be upset, and she explained that her mother's boyfriend had been hitting on her. Andrews asked Thrasher for a ride in order to avoid her mother's boyfriend, and Thrasher agreed. Thus, the four friends set out from the club, along with Andrews. Andrews gave them directions to a trailer park where her mother allegedly lived.
 {¶ 4} There are some minor discrepancies in the accounts of the state's witnesses from the time they arrive at the trailer park, but it is undisputed that after Andrews approached the trailer to which she had directed them, Brian and Tonya Curran emerged from the trailer, and a fight ensued. Smith, Carter, Thrasher, and Barney had no prior relationship with Andrews or the Currans. During this altercation, Barney wrestled with Brian Curran and, when Barney pinned Brian to the ground, Tonya hit Barney about the head. Thrasher was either struck with a metal bucket or was pushed or fell into the doorframe of the car, sustaining serious injuries to her face and the loss of teeth. As the confrontation between Barney and Brian was breaking up, Brian lunged toward Carter, who was walking toward the car. Carter was stabbed several times with a kitchen knife, sustaining serious injuries. The four friends eventually managed to get back into their car. They then drove to a nearby fire station for medical assistance. The kitchen knife was later covered outside the trailer.
 {¶ 5} The defense presented the testimony of Tonya Curran. According to her account, after Andrews entered their trailer, three other people burst in armed with beer bottles. These people dragged Brian and her outside and beat them. Tonya admitted to throwing a brass bucket at Thrasher during the melee, but claimed that she had acted in self-defense and in defense of her husband. Brian Curran did not testify.
 {¶ 6} Tonya Curran was indicted on one count of felonious assault, and her case was tried to a jury in February 2005. She was found guilty as charged.
 {¶ 7} Curran raises three assignments of error on appeal.
 {¶ 8} I. "THE TRIAL COURT ERRED IN NOT ALLOWING THE DISCLOSURE OF GRAND JURY TESTIMONY AFTER A PARTICULARIZED NEED WAS SHOWN BY THE DEFENSE."
 {¶ 9} Curran claims that she had established a particularized need for the grand jury testimony based on defense counsel's notes regarding witnesses' testimony before the grand jury and inconsistencies between those notes and the testimony offered at trial. Curran suggests that the alleged victims changed their testimony after it became clear that they would not be subject to prosecution, inventing a common story to convict the Currans. She further claims that the trial court should have released the grand jury testimony to the defense — or at least reviewed the testimony in camera for inconsistencies — because of the witnesses' "failure to obey separation orders and the dislike shown by witnesses towards the defendants."
 {¶ 10} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." State v. Greer
(1981), 66 Ohio St.2d 139, 420 N.E.2d 982, syllabus, citingState v. Patterson (1971), 28 Ohio St.2d 181, 277 N.E.2d 201, paragraph three of the syllabus. The showing of "particularized need" is a threshold requirement, and it requires a defendant to make a showing that it is probable that the defendant will not obtain a "fair adjudication of the allegations placed in issue by the prosecution's witness" without disclosure of that witness's grand jury testimony. State v. Hernandez (Mar. 29, 1991), Columbiana App. No. 87-C-56. Impeachment purposes may be a proper basis for disclosure of grand jury testimony, but that purpose alone is not sufficient. Id. In conjunction with the impeachment purpose, the "particularized need" standard, as defined above, must still be met. Id. The trial court, in its discretion, determines whether the defendant has shown a particularized need for the production of grand jury proceedings. Greer,66 Ohio St.2d at 148.
 {¶ 11} It is natural and understandable that certain details that were omitted from a witness's previous statements may be brought out for the first time at trial. State v. Kenney,
Cuyahoga App. No. 80653, 2004-Ohio-972; State v. Garcia,
Hancock App. No. 5-01-12, 2001-Ohio-2262. It is not appropriate to construe such omissions to be inconsistencies. State v.Hartford (1984), 21 Ohio App.3d 29, 31, 486 N.E.2d 131;Kenney, supra, Garcia, supra. Only material omissions may be taken as inconsistencies. Hartford, 21 Ohio App.3d at 31. Again, it is within the trial court's discretion to determine whether the omission is material and whether it is inconsistent with the witness's trial testimony. State v. Clay,29 Ohio App.2d 206, 212, 280 N.E.2d 385.
 {¶ 12} The trial court concluded that Curran and her husband had not shown a particularized need for the grand jury testimony, and therefore it denied her motion to review that testimony. In her brief, Curran does not point to any particular witness or issue with respect to her argument that the testimony was inconsistent. Rather, she asserts, generally, that the victims had changed their stories over time because they had had opportunities to discuss the incident with one another and had "a strong personal dislike" of her.
 {¶ 13} On the pages of the transcript cited in Curran's brief, the only alleged inconsistency argued to the court in support of the Currans' particularized need was that Barney's "earlier written statement doesn't mention being pushed into the trailer; and from the notes I've seen about the Grand Jury testimony, he does say it there." (The grand jury testimony had not been transcribed as of the time of trial.) Because this same alleged inconsistency in Barney's statement to the police and his trial testimony had already been brought to light and Barney could be questioned about it, we agree with the trial court that Curran had failed to create a particularized need for Barney's grand jury testimony. Moreover, we do not find this alleged discrepancy to be so central to Barney's recitation of events as to make it probable that Curran would not obtain a "fair adjudication of the allegations placed in issue by the prosecution's witness" without disclosure of Barney's grand jury testimony. Thus, the trial court did not abuse its discretion in concluding that Curran had not shown a particularized need for the grand jury testimony.
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} II. "THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHIC EVIDENCE THAT WAS NOT PROPERLY DISCLOSED TO THE DEFENSE DURING DISCOVERY."
 {¶ 16} According to Curran, six photographs that were used by the prosecution at trial had not been disclosed to the defense prior to trial, as required by Crim.R. 16(B)(1)(c). The trial court admitted these photographs over Curran's objection. She claims that she was prejudiced by the nondisclosure of these photographs and requests a new trial.
 {¶ 17} Curran does not make any specific argument as to how the photographs in question were prejudicial to her. In our view, these photos were not significantly different from others which were admitted without objection. For example, Exhibit 2 was a photo of blood on the exterior of the friends' car. Three other photos — which had been disclosed prior to trial — also showed blood on the exterior of the car, albeit from different vantage points. Two of the other disputed photos, Exhibits 11 and 12, displayed the inside of the Currans' trailer and were also duplicative of photos that were admitted without objection. More importantly, Curran does not claim that the disputed photos were probative of her guilt or innocence. Thus, although the state may have failed to fully comply with Crim.R. 16(B), the trial court acted within its discretion in admitting the photographs over Curran's objection.
 {¶ 18} The second assignment of error is overruled.
 {¶ 19} III. "THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A MISTRIAL BROUGHT BY THE DEFENSE IN RELATION TO THE FAILURE OF THE WITNESSES TO OBEY THE WITNESS SEPARATION ORDER."
 {¶ 20} Curran claims that she was prejudiced by the fact that the complaining witnesses — Smith, Thrasher, Carter and Barney — had talked with one another about the events in question before and during trial and had the opportunity to review one another's statements to sheriff's deputies. She claims that this conduct violated the court's order for the separation of witnesses, although the witnesses did not actually hear one another's trial testimony.
 {¶ 21} At the beginning of the trial, the trial court ordered the witnesses excluded from the courtroom so that they would not hear one another's testimony, pursuant to Evid.R. 615. However, during the course of the trial, the complaining witnesses admitted that they had been sitting together in the courthouse, apparently with a victim's advocate, and that they had each had the opportunity to read their own previous statements to the sheriff's deputies, as well as the statements of the others. They denied, however, that they had actually carefully read any of the other complaining witnesses' statements. Barney also stated that he had talked with deputies "in general" about the night's events and that other victims had been part of those conversations. The witnesses denied, however, that they had talked about their trial testimony. The defendants moved for a mistrial on the basis that the complaining witnesses had been discussing their testimony in violation of the separation order. They did not request that the trial court address this issue in any other way.
 {¶ 22} The trial court denied the defendants' request for a mistrial, noting that the witnesses had been prohibited from discussing their testimony and that it was not apparent that they had done so, although they had discussed the events in question. The court did find that the witnesses had come "dangerously close" to violating its order. It concluded that there had been no prejudice to the defense, however, because the witnesses had readily admitted to these conversations and to looking at one another's statements, and they had been thoroughly cross-examined about the possible effect of this conduct on their testimony.
 {¶ 23} The trial court viewed the witnesses' testimony and how these events transpired, and thus was in the best position to judge the credibility of the witnesses. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. That being the case, we cannot conclude that the court abused its discretion in concluding that the witnesses' contact at the courthouse and possible familiarity with one another's earlier statements to the sheriff's deputies was not prejudicial to Curran. As the court pointed out, there were discrepancies between the witnesses own statements to the deputies at the time of the offense and their testimony at trial, and these discrepancies were subject to cross-examination. Moreover, the witnesses' admitted intoxication at the time of their encounter with the Currans and, in the case of Thrasher and Carter, their extensive injuries provided other possible explanations for the inconsistencies in their stories and for their assertions that they remembered more about the events at the time of trial than they did at the time of their previous statements. We also note that the complaining witnesses were not entirely consistent in their accounts by the time of trial, which undercuts Curran's suggestion that the witnesses collaborated to assure her conviction. As such, the court's handling of the matter was not unreasonable.
 {¶ 24} The third assignment of error is overruled.
 {¶ 25} The judgment of the trial court will be affirmed.
Grady, P.J. and Brogan, J., concur.