[Cite as *State v. Setty*, 2014-Ohio-2340.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NOS. CA2013-06-049 |
| Plaintiff-Appellee, | : | CA2013-06-050 |
| | : | O P I N I O N |
| - vs - | | 6/2/2014 |
| | : | |
| JASON CHRISTOPHER SETTY, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case Nos. 2012-CR-0068 and 2012-CR-0731


D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Michaela M. Stagnaro, 810 Sycamore Street, 6th Fl., Cincinnati, Ohio 45202, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1}  Defendant-appellant, Jason Christopher Setty, appeals from his convictions and sentence in the Clermont County Court of Common Pleas for rape, attempted rape, sexual battery, disseminating matter harmful to juveniles, and felonious assault.

**I. FACTS**

{¶ 2}  Following allegations of sexual abuse by appellant's two minor stepdaughters, Lo.R. and Li.R., charges were brought against appellant.  Specifically, on January 25, 2012,

appellant was indicted in Case No. 2012-CR-0068 on six counts of rape in violation of R.C. 2907.02(A)(1)(b), with three of those counts specifying that the victim was less than 10 years of age, one count of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02(A)(1)(b), six counts of sexual battery in violation of R.C. 2907.03(A)(5), and one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1), where the juveniles involved were under the age of 13. The charges arose out of allegations that between March 2011 and September 2011, appellant orally, anally, and vaginally raped or attempted to rape Lo.R. and Li.R. and showed them pornographic videos depicting sexual acts that he later asked them to perform. At the time of the sexual abuse, Lo.R. was ten years old and Li.R. was eight and nine years old.

{¶ 3} On September 26, 2012, appellant was indicted a second time in Case No. 2012-CR-0731 on two counts of felonious assault in violation of R.C. 2903.11(A)(1). These charges arose out of allegations that between March 2011 and September 2011, appellant engaged in sexual contact and conduct with Lo.R. and Li.R., which caused the children to suffer serious physical harm, including posttraumatic stress disorder (PTSD).

{¶ 4} The two cases were consolidated for trial. Prior to trial commencing, the state filed a motion in limine, seeking to prohibit appellant from introducing several pieces of evidence at trial. Following a hearing on the motion, the trial court issued a preliminary ruling that appellant was precluded from introducing evidence of the victims' mother's sexual history and any past accusations of sexual assault she may have made against others, evidence that Lo.R. had previously been hospitalized for mental health issues, and evidence pertaining to abuse allegations Lo.R. and Li.R. had made against appellant while the girls lived in Kentucky and Kansas.

{¶ 5} A four-day jury trial commenced in May 2013. At trial, the state presented the testimony of the two minor victims. Lo.R. testified she was born on January 29, 2001, and

between March 2011 and mid-October 2011, she lived in Milford, Clermont County, Ohio with her sisters, Li.R. and H.S., her brother, M.R., her mother, N.S. ("Mother"), and appellant. She stated appellant was the disciplinarian in the household, and he would punish her by punching her in the arm or hitting her with a belt on her bottom hard enough to leave red marks and small bruises. Lo.R. testified she was afraid of appellant and felt she had to follow his rules and commands or he would spank her with the belt. She described several instances where appellant inappropriately touched her, which usually occurred in the master bedroom when Mother was not at home. Lo.R. described one instance where appellant, who was naked, called her into the master bedroom and ordered her to take off her clothes and get on the bed. Lo.R. testified appellant then "touch[ed] his private, and he * * * put it up and down" before he made her put her mouth on his penis and go "up and down."[1] Appellant then had Lo.R. get on her hands and knees. Lo.R. testified that after appellant put something "sticky" on his private to "make it fit," he put his private in her bottom. Lo.R. testified appellant then pulled out his private and he started touching it "up and down again. * * * Really fast." Lo.R. stated "white stuff came out * * * [o]f his private" and into her mouth. She described the white stuff as "yucky" and "nasty" and testified it was like "clumpy milk."

{¶ 6} Lo.R. described another occasion where appellant called her into the master bedroom when Mother was not at home. Lo.R. testified appellant was again naked and touching his private "up and down." Lo.R. stated appellant had already put the "sticky stuff" on his private and he made her put her mouth on his private. He then told her to get on her knees and hold on to the bars at the footboard of the bed, placed one of his socks in her mouth, and put his private in her bottom. Lo.R. testified that appellant put "more" of his private into her bottom than he had before, and that "it hurt." She testified that when

---

1. On anatomical diagrams of both the male and female human body, Lo.R. identified a male's penis as his "private" and a female's vagina as her "private."

appellant was done, she went to the bathroom and discovered blood in her stool.

{¶ 7} Lo.R. then described an incident that occurred in the bathroom she shared with her siblings. She explained appellant came into the bathroom and pulled down his pants. At this time, she was not wearing any pants, and appellant tried to put his private in her private, or vagina, but it "wouldn't fit."

{¶ 8} In addition to these incidents, Lo.R. described an instance where appellant showed her a video on a laptop. Lo.R. testified that in the video, a man and woman were naked. She stated the video showed a hole in the wall or on the floor with a man's private sticking through the hole and a woman standing by the hole trying to "put her private into it" and "sucking on it."

{¶ 9} Lo.R. testified she asked appellant why he did these things to her and he told her it was because "it made him feel good." He also threatened to spank her with his belt if she told anyone about what was happening. Lo.R. eventually disclosed the abuse after she, her siblings, and Mother left appellant and moved to North Carolina. On the evening of Halloween 2011, Lo.R. told her mom about the abuse "because [she] knew [they] were safe and he couldn't hurt [her] anymore." Lo.R. testified that while she was telling Mother about the abuse, Li.R. entered the room and started telling Mother that she too was abused. Mother called the police and Lo.R. went to the hospital to be examined. Lo.R. also testified she had been seeing a psychotherapist for about a year to discuss nightmares and other problems she was experiencing.

{¶ 10} On cross-examination, Lo.R. admitted that prior to Halloween, she had told Mother and an aunt that appellant had hit her, but she had not disclosed the sexual abuse. Lo.R. also admitted that months before her family had moved to North Carolina, they had gone on a two-week trip to Pennsylvania. Appellant was not present for this trip, yet Lo.R. did not disclose the abuse during this time.

{¶ 11} Li.R. also testified at trial. Li.R testified she was born on April 17, 2002, and had previously lived with Mother, appellant, and her siblings in Milford, Ohio. Li.R. stated that when she lived with appellant, he would punish her by spanking her with a belt, which left bruises and red marks on her side and buttocks. She testified appellant would also touch her on her "private" when Mother was not at home.[2] Appellant threatened to spank her "red, blue, and black" if she told anyone about what he was doing. Li.R. described instances in the master bedroom where appellant forced her to bend over so that he could put his private in her butt and in her "potty area." She testified that appellant sometimes used a cream on his private, and that he got the cream from the master bathroom. She also described instances where he made her touch his private with her hands and mouth. She testified she had to cup her hands around his private and "shake it." She also had to put his private in her mouth and suck until "white stuff came out" of his private and into her mouth. She testified that the "white stuff" looked "like yogurt."

{¶ 12} Li.R. also testified that appellant had her watch a video on a laptop in the living room. The video was of a "boy who had his private part * * * in the wall." She testified that after the boy put his private part through the hole in the wall, a girl began "touching it and doing stuff to it. * * * Like rubbing it, like putting it in her mouth."

{¶ 13} Following Lo.R. and Li.R.'s testimony, Detective Greg Jenkins from the Miami Township Police Department testified. Jenkins stated he began investigating appellant after he received a facsimile report from Cumberland County Children's Services in North Carolina, which detailed the sexual abuse. As part of his investigation, he obtained a warrant to search appellant's residence in Milford, Ohio. The warrant was executed on November 3, 2011. At this time, a black light was used to look for bodily fluids and samples of carpet were

---

2. On anatomical diagrams of both the male and female human body, Li.R. identified a male's penis as his "private" and a female's vagina as her "private" where she "goes potty."

collected from the home. According to Jenkins, neither the black light nor the carpet samples "yield[ed] any result." During the search, numerous computers and electronics were collected and were sent to Hamilton County to be forensically examined. Jenkins testified that although multiple computers, phones, and cameras had been seized, only one laptop contained evidence of value.

{¶ 14} John Ruebusch, an expert in computer forensics with the Hamilton County Sheriff's Office, Regional Electronic Computer Investigation Section, also testified. Ruebusch examined the items seized from appellant's home and discovered evidence on a MacBook Silver Pro laptop. The laptop was not password protected and contained only one user profile, which was attributed to "Jason Setty." On July 29, 2011 at 1:12 a.m., a webpage about "glory holes" was visited. An image recovered from the laptop depicted a video of a penis sticking through a hole in a wall and a naked female preparing to engage in fellatio on the other side of the wall. While Ruebusch could not determine if the video was or was not viewed, he testified that he believed the website about "glory holes" was visited as a result of an active search, and not a result of an internet "pop-up." He testified that a search of appellant's hard drive revealed numerous references to "glory holes," and that various "glory holes" videos and stories about incest had been accessed on the computer.

{¶ 15} Ruebusch further testified that prior to the "glory holes" website being visited on July 29, 2011, at 12:20 a.m., a Culinary Art's student schedule for "Jason Setty" was sent to an email account for "JSetty1985." Around 1:36 a.m., after the "glory holes" website was visited, a search for a "china cap" cooking instrument was conducted. At 1:53 a.m., a confirmation of sale was sent to the account for "JSetty1985." This confirmation of sale indicated that the "bill to" purchaser of a "China Cap/Strainer" was "Jason Setty" and that the item would be "Shipped to" "Jason Setty" at his address in Milford, Ohio. Given the time the various websites were visited, Ruebusch's opined that the same person that had actively

searched for china cap strainers had also actively searched for "glory holes" on July 29, 2011.

{¶ 16} Phyllis K. Marion, a pediatric nurse practitioner, testified at trial as an expert in the field of child abuse pediatrics. Marion testified she is a child medical examiner in the child abuse clinic at the Southern Regional Health Education Center in Fayetteville, North Carolina, and in her practice she sees only patients that have disclosed abuse. As a nurse practitioner, Marion takes a history from the patient, conducts a physical examination of the patient, decides a course of treatment, and prescribes medication for the patient. A supervising physician then reviews and signs off on her reports. Marion testified that on November 16, 2011 and on November 17, 2011, she performed medical evaluations of Lo.R. and Li.R., respectively, which included pre-medical interviews and physical examinations.

{¶ 17} During the pre-medical interview with Lo.R., Lo.R. informed Marion that "bad things" had happened to her because of her stepfather. Marion stated Lo.R. disclosed that she had been abused and such abuse included anal intercourse and oral sex. Marion testified Lo.R. showed advanced sexual knowledge for a child her age and was able to describe ejaculation, describe appellant's use of a lubricant during anal sex, and demonstrate taking appellant's private part in her hands and rubbing it to masturbate appellant. After obtaining this information from Lo.R., Marion conducted a physical examination of the child. Marion did not observe any abnormalities to Lo.R.'s vagina, but did notice that the rugae around Lo.R.'s anus was flat, which was consistent with a large object being inserted into the anus. Marion testified that she believed to a reasonable degree of medical certainty that Lo.R. had been abused physically, sexually, and psychologically.

{¶ 18} Marion testified that during Li.R.'s pre-medical interview, Li.R. also talked about and demonstrated sexual knowledge beyond her years. Li.R. was able to describe French kissing, "humping," and ejaculation and gave vivid details about appellant putting his private

in her "front" and her butt. A physical examination of Li.R. revealed no abnormalities to Li.R.'s vagina, but Marion observed flattening of the rugae around Li.R.'s anus, which was consistent with a large object entering the anal cavity. Marion testified that she believed to a reasonable degree of medical certainty that Li.R. had been abused sexually, physically, and psychologically.

{¶ 19} On cross-examination, Marion testified she only spent 45 minutes to an hour with each child during the course of her examination. She also testified that in addition to sexual abuse, flat rugae around the anus can result from chronic constipation and the passing of very large, hard stool. She testified that both Lo.R. and Li.R. denied having hard stool.

{¶ 20} Following Marion's testimony, Judith Rose testified as an expert in psychotherapy. Rose testified that in addition to being a psychotherapist with Cape Fear Valley Behavior Healthcare in North Carolina, she is a licensed clinical social worker and a certified trauma-focused cognitive behavioral therapist and forensic interviewer. Rose testified that she has conducted diagnostic testing for PTSD on over 100 children. She explained that using the PTSD index created by the University of California, Los Angeles (UCLA PTSD index) she is able to determine whether a child falls within one of the following three ranges for PTSD: highly significant range, moderate range, or not significant range. In May 2012, Rose conducted diagnostic testing of Lo.R. and Li.R, and both girls tested in the highly significant range for PTSD. Rose testified that as a result of the physical and sexual abuse they suffered, Lo.R. and Li.R. experienced psychological disturbances and impairments serious enough to impact almost every aspect of their life, including their health, school, home, and social development. Rose explained Lo.R. and Li.R. had symptoms of avoidance, hypervigilance, and numbing and suffered from somatic symptoms. She testified Lo.R. and Li.R. had undergone psychotherapy treatment for the ten months prior to trial and,

as a result, their condition had been downgraded from PTSD to an adjustment disorder with anxiety.

{¶ 21} Following Rose's testimony, the state rested and appellant made a Crim.R. 29 motion for acquittal, which was denied by the trial court. Thereafter, appellant called Mother as his sole witness, seeking to elicit testimony demonstrating that Lo.R. and Li.R. had fabricated their testimony in an effort to help Mother keep custody of H.S.[3] Mother testified that she and her children had lived with appellant in a home in Milford, Ohio from March 2011 to mid-October 2011 and, during this time, appellant was attending culinary school. Mother explained that on October 17, 2011, she and her kids, including appellant's biological daughter H.S., left appellant and moved to Fayetteville, North Carolina to live with her family. Shortly thereafter she was served with a protection order appellant obtained from the Clermont County Domestic Relations Court, and on October 29, 2011, she received an order granting temporary custody of H.S. to appellant and denying her parenting time. Mother stated there were several phone calls between herself and appellant while they tried to work out custody of H.S. that caused her to become upset. Mother testified that on October 31, 2011, prior to Lo.R. and Li.R revealing the abuse, she had talked to her aunt and uncle about her concerns of losing custody of H.S. She explained that later that evening, while she was sitting in the living room watching TV, Lo.R. and Li.R. told her about the abuse.

{¶ 22} Mother also testified that while appellant was serving overseas in Afghanistan, she fabricated a story to mislead the military and get appellant sent back home. Mother explained that her fabrication did not involve the children.

{¶ 23} Following Mother's testimony, the defense renewed its Crim.R. 29 motion for

_____

3. Appellant also sought to introduce the testimony of several other individuals who knew of appellant's relationship with Mother and his relationships with Lo.R. and Li.R. The trial court precluded these witnesses from testifying on the basis of Evid.R. 801. Appellant's counsel proffered the testimony of these witnesses for the record.

acquittal. The trial court denied the motion, closing arguments were held, and the case was submitted to the jury. The jury returned guilty verdicts on all counts under both indictments. With respect to Case No. 2012-CR-0068, appellant was sentenced on May 31, 2013, to life without parole on the three rape convictions relating to Li.R. (counts one through three) and on the three rape convictions relating to Lo.R (counts four through six). The three rape counts relating to Li.R. were ordered concurrent to one another. The three rape counts relating to Lo.R. were ordered concurrent to one another, but consecutive to the rape sentences relating to Li.R. Appellant was sentenced to 8 years imprisonment for the attempted rape of Lo.R. (count seven), which was run consecutively to appellant's sentences on the rape convictions. Appellant was sentenced to 18 months in prison for disseminating matter harmful to juveniles (count 14), which was run consecutively to the rape and attempted rape sentences. The trial court determined that appellant's convictions for sexual battery (counts eight through 13) were allied offenses of similar import and the convictions were merged with the rape convictions. With respect to Case No. 2012-CR-0731, the trial court determined that appellant's two convictions for felonious assault were allied offenses of similar import and merged the convictions with the six counts of rape in Case No. 2012-CR-0068. Appellant was classified as a Tier III sex offender.

{¶ 24} Appellant timely appealed his convictions and sentence, raising six assignments of error.

## II. ANALYSIS

### A. Motion in Limine

{¶ 25} Assignment of Error No. 1:

{¶ 26} THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING THE STATE'S MOTION IN LIMINE AND PRECLUDING APPELLANT'S ABILITY TO ADMIT EVIDENCE AT TRIAL WHICH DENIED HIM THE RIGHT TO FULLY DEFEND HIS CASE AT

TRIAL.

{¶ 27} In his first assignment of error, appellant argues the trial court erred by granting the state's motion in limine to preclude him from admitting certain evidence at trial. Appellant contends the trial court's decision granting the state's motion in limine had the same effect of a motion to suppress, as it essentially precluded him from making any reference to the evidence throughout "all phases of the trial." Specifically, appellant claims he was improperly denied the right to present evidence of the following: (1) Mother's childhood rape by her father (Grandfather), and the fact that Grandfather may have lived with Lo.R. and Li.R. during their childhood; (2) Mother's rape by her ex-husband, and whether or not the rape occurred in front of Lo.R. and Li.R.; (3) abuse allegations Lo.R. and Li.R. made about appellant while the children lived in Kentucky and Kansas; and (4) hospitalization records of Lo.R. for mental health issues. Appellant contends the aforementioned evidence was essential to his defense and the trial court's exclusion of such evidence precluded him from challenging the children's credibility.

{¶ 28} At the outset, we note that the trial court's decision to grant the state's motion in limine was a "tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue[s]." *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). While the trial court initially ruled appellant was precluded under Evid.R. 401, 402, 404(B), and 608(B) from admitting evidence of Mother's past sexual history and experiences, Lo.R.'s hospitalization records, and statements made by the minor victims about abuse that occurred in Kentucky and Kansas, the trial court made it clear that its ruling was tentative and interlocutory in nature. In its entry granting the state's motion in limine, the trial court specifically stated:

> A ruling on such a motion reflects the court's anticipated treatment of an evidentiary issue at trial and is tentative, interlocutory and precautionary in nature. [The] court is at liberty

to change its ruling on disputed evidence in the actual context at trial.

* * *

IT IS HEREBY ORDERED, that the procedure to be followed during the course of this trial regarding these evidentiary matters is as follows:

First, if either counsel believes that an inquiry into any of these areas should be reconsidered by the Court, he must initially alert the Court to such a request by simply indicating that an issue has arisen that needs to be addressed at the bench and he shall make no other reference to any stated reason for such a request. Second, counsel will approach the bench for a sidebar conference to discuss the particular issue sought to be reconsidered. Third, if the Court deems it necessary, a hearing will be conducted pursuant to Evid.R. 104, out of the presence of the jury.

{¶ 29} As the trial court's ruling was interlocutory, it was incumbent upon appellant "to seek the introduction of the evidence by proffer or otherwise [at trial] in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." *Grubb* at 203. The initial ruling on the motion in limine did not, in and of itself, preserve the record on appeal. *Id.*; *State v. Hensley*, 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 29. Rather, "any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by objection, proffer, or a ruling on the record." *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 27.

{¶ 30} The record reflects that the only evidentiary issue preserved at trial was the issue of the admissibility of Li.R. and Lo.R.'s allegations of abuse while they resided in Kentucky and Kansas. Other than the Kentucky and Kansas abuse allegations, appellant did not seek to introduce the other pieces of evidence he now complains were excluded in error at trial. As appellant did not seek to introduce such evidence or proffer the contents of such evidence at trial, we conclude, consistent with Evid.R. 103, that he has waived his right to

- 12 -

object to the evidentiary issues on appeal. *See Grubb* at 203.

{¶ 31} With respect to the Kentucky and Kansas abuse allegations, the trial court's preliminary ruling indicated appellant was precluded under Evid.R. 404(B) and 608(B) from introducing statements Li.R. and Lo.R. made indicating appellant had abused them in 2007, 2008, and 2009 while they lived in Kentucky and Kansas. Appellant argued these statements were critical to his case because on some of the dates of the alleged abuse he was deployed by the military oversees, making it impossible for him to have abused Li.R. and Lo.R. at such times. He argued that such evidence was critical in demonstrating the victims' statements lacked credibility. The court indicated it would preclude such evidence as appellant was seeking to use the statements as proof of the victims' character for misrepresenting the truth to show that the victims were now acting in conformity with that character by falsely accusing him. In reaching this decision, the trial court acknowledged that in cases involving child sex abuse charges, children often cannot determine with precision and specificity the dates and times of an act or acts of abuse, and that a child-victim's inability to precisely and specifically determine dates and times does not necessarily mean that the child has falsified the events. The trial court, therefore, granted the state's motion in limine on this issue.

{¶ 32} At trial, both Li.R. and Lo.R. testified about the sexual abuse that occurred in Ohio. According to both Li.R. and Lo.R., they did not reveal the abuse until they felt safe after moving away from appellant to North Carolina. On cross-examination, appellant did not seek to introduce the Kentucky and Kansas allegations as a means of impeaching Li.R. or Lo.R., but rather waited until his direct examination of Mother before attempting to introduce the evidence. During a sidebar conference, defense counsel indicated he wanted to ask Mother about the Kentucky and Kansas abuse allegations as a means of impeaching Li.R. and Lo.R. Defense counsel also wanted to question Mother about why the victims did not

disclose the abuse when they lived in Kentucky and Kansas and appellant was overseas. The trial court did not permit defense counsel to question Mother about the Kentucky and Kansas abuse allegations, holding that such evidence could not be used to impeach the children through their mother's testimony and that the evidence was inadmissible under Evid.R. 613. The trial court informed defense counsel that if he wanted to impeach Li.R. and Lo.R. with the Kentucky and Kansas abuse allegations, the appropriate time to have done so would have been on cross-examination of the two victims.

{¶ 33} We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Boles*, 12th Dist. Brown CA2012-06-012, 2013-Ohio-5202, ¶ 14. "A reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *Id.*, citing *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.*

{¶ 34} We find no error in the trial court's exclusion of the Kentucky and Kansas abuse allegations. Pursuant to Evid.R. 613, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if both of the following apply: (1) if the statement is offered solely for the purpose of impeaching the witness, the witnesses is afforded a prior opportunity to explain or deny the statement and the opposing party is afforded an opportunity to interrogate the witness on the statement and (2) the subject matter of the statement is a fact of consequence or a fact that may be shown by extrinsic evidence, either under the common law of impeachment or Evid.R. 608(A), 609, or 616(A) or (B). Here, appellant did not seek to impeach Lo.R. or Li.R. while they were on the stand. Appellant failed to ask either Lo.R. or Li.R. about statements they made regarding the abuse that took place in Kentucky or Kansas or why they did not disclose the abuse while appellant was overseas. As the topics were

never broached with the victims, neither Lo.R. or Li.R had the opportunity to explain or deny the statements as required by Evid.R. 613(B)(1). Any attempt to impeach Lo.R. or Li.R.'s testimony by asking Mother about statements the children made is improper and prohibited by Evid.R. 613. The trial court, therefore, did not abuse its discretion in excluding the evidence.

{¶ 35} Appellant's first assignment of error is overruled.

## B. Expert's Qualifications and Testimony

{¶ 36} Assignment of Error No. 2:

{¶ 37} THE TRIAL COURT ERRED BY PRECLUDING APPELLANT FROM CHALLENGING MS. MARION'S QUALIFICATIONS AS AN EXPERT DURING CROSS-EXAMINATION THUS PRECLUDING HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL.

{¶ 38} In his second assignment of error, appellant argues the trial court erred by precluding him from challenging Marion's qualifications to testify as an expert. Appellant further contends Marion was improperly permitted to testify at trial "as if she were a pediatric medical doctor even though she was only a registered nurse." Appellant asserts that if he had been given the ability to attack her credibility as a medical expert, the outcome of trial would have been different.

{¶ 39} Initially, Marion was designated as an expert in the field of child abuse pediatrics without objection. However, the trial court indicated her expertise was "subject to cross."[4] During Marion's direct examination, defense counsel objected to her ability to testify

---

4. {¶ a} Marion was made an expert as follows:

 {¶ b} [STATE]: Your Honor, the State would move under Rule 702 to request the Court accept Dr. Marion as an expert in the field of child abuse pediatrics.

 {¶ c} THE COURT: Subject to cross. You can proceed.

as an expert, and the following discussion was held at sidebar:

> [DEFENSE COUNSEL]: There's going to be an objection as to the ability of this particular person to make a diagnosis. And then we're going to have, I'm sure - - I'm trying to play - - I'm trying to do this exactly the way you've instructed us, and that is to come up here. The problem is, I anticipate an answer - - an answer to the question, an opinion that these children indeed were sexually abused - - sexually and physically abused. I believe that is a diagnosis.
>
> [STATE]: Uh-huh
>
> [DEFENSE COUNSEL]: At least that's the way I'm treating it as.
>
> [STATE]: It's her opinion.
>
> THE COURT: She's a doctor.
>
> [DEFENSE COUNSEL]: She is not a medical doctor
>
> [STATE]: She's - - it's the subject of cross examination.
>
> THE COURT: She's a doctor. What's the difference? She - - the only one you're doing - - and I set this up before. I said if there are any motion in limine. What you're doing is - - you can question her about her diagnosis, but I'm not going to go through with [a] Daubert hearing at this point in the stage because you're challenging her expertise. This should have been done long ago. And candidly, she is a doctor. She's, you know, she has the expertise, the education. The State or you are not necessarily entitled to the best expert, and you can - - you can explore those questions with her about her diagnosis and things such as that. You - - you can ask her about that. When you get to that point if you want to make an objection, you know, bring it up at this point in time, but she's got the expertise.

{¶ 40} From the foregoing discussion, it is clear that the trial court did not permit appellant to further cross-examine Marion's qualifications as an expert. Given the method in which the trial court admitted Marion as an expert, in which the trial court specifically stated that Marion was deemed an expert "subject to cross," we find the trial court's refusal to allow appellant to later cross-examine Marion as to her qualifications to be error. However, we find that the error was harmless as the record demonstrates Marion was qualified to testify as an

expert in the field of child abuse pediatrics, pursuant to Evid.R. 702.[5]

{¶ 41} Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

Additionally, an expert's testimony must assist the trier of fact in the search for the truth. *State v. Cartwright*, 12th Dist. Preble No. CA2012-03-003, 2013-Ohio-2156, ¶ 34. "[T]he question of whether a witness possesses the necessary knowledge, skill, experience, or training to testify as an expert [on] a given subject matter is a question left to the trial court's sound discretion." *Id.*

{¶ 42} Marion testified that she is a pediatric nurse practitioner who has obtained a Bachelor of Science degree in nursing, a Master of Science degree with a concentration in maternal and child health nursing, and a Doctorate of Science degree in nursing. She is a member of the American Professional Society of the Abuse of Children, and has served as a clinical instructor on the issue of child abuse to pediatric residents, medical students and master of nursing students. She testified that in her current position with the South Regional Area Health Education Center in Fayetteville, North Carolina she serves as a child medical examiner in the child abuse sub-specialty clinic. She explained that 50 percent of her practice consists of evaluations of children who have disclosed abuse. She has completed

---

5. Appellant did not proffer any evidence on the record to demonstrate how Marion was not qualified to give an expert opinion in this matter. As such, our review as to whether Marion was qualified to render an opinion in child abuse pediatrics is limited to the evidence actually presented at trial.

over 1,000 child abuse evaluations, which involves taking the history from a patient and conducting a physical examination of the patient. She further testified that she has been qualified as an expert witness over 50 times and has testified as an expert in numerous courts, including various district courts throughout New York and North Carolina. She further testified that she remains current in her field by attending at least 50 hours of continuing education each year.

{¶ 43} Based on the foregoing, it is evident that Marion possessed the qualifications, training, and experience necessary to qualify as an expert in the field of child abuse pediatrics. While the trial court should have permitted appellant to cross-examine Marion's qualifications more fully, we find that the court's failure to do so was harmless given Marion's education, training, and experiences.

{¶ 44} Moreover, we find no merit to appellant's contention that his inability to attack Marion's qualifications permitted the jury to place undue weight on her testimony. While the trial court prohibited appellant from cross-examining Marion about her qualifications, the trial court expressly ruled that defense counsel could question Marion about the diagnosis she rendered. The record reflects that defense counsel did in fact challenge Marion about her diagnosis that the children had been physically, sexually, and psychologically abused. In determining what weight, if any, to give to Marion's testimony, the jury was permitted to reject or discredit those portions of her testimony that it did not find credible. *See In re S.C.T.*, 12th Dist. Butler No. CA2004-04-095, 2005-Ohio-2498, ¶ 24 (finding jurors, as the trier of fact, are "free to believe all, part, or none of the testimony of each witness").

{¶ 45} Finally, we find no merit to appellant's contention that the trial court improperly allowed Marion to testify at trial "as if she were a pediatric medical doctor even though she was only a registered nurse." Marion's status as a pediatric nurse practitioner was made abundantly clear to the jury. Marion was specifically asked if she was a medical doctor, and

she responded, "No, I'm not."  Furthermore, she clarified that she was referred to as "Dr. Marion" because she had received her doctorate degree in nursing.  She further testified that her findings as a nurse practitioner were subject to review by a supervising physician.  Given such testimony, it is clear Marion did not hold herself out to be a medical doctor, but rather informed the jury of her position and duties as a pediatric nurse practitioner.

{¶ 46}  Having found no merit to appellant's arguments, his third assignment of error is overruled.

### C. Prosecutorial Misconduct

{¶ 47}  Assignment of Error No. 3:

{¶ 48}  THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING THE PROSECUTOR TO MAKE IMPROPER REMARKS TO THE JURY THUS PREJUDICING APPELLANT'S RIGHT TO A FAIR TRIAL.

{¶ 49}  In his third assignment of error, appellant contends the prosecutor made statements during closing arguments that prejudiced his right to a fair trial.  Appellant has cited to only one instance where an alleged improper statement was made.  Specifically, appellant argues the following comment by the prosecutor was improper:

> [STATE]:  And, in order for you to believe - - at least in my opinion from what I could glean from this - - in order for you to believe that the Defendant is innocent of these crimes, you have to believe that these two little girls concocted these stories about being orally, vaginally, and anally raped because they on their own were worried that their mom was worried about custody of [H.S.].  That's it.  That's it in a nutshell.  It took 45 minutes to get there, but that's it in a nutshell.  That's it.
>
> Those two girls heard mom being distraught about custody issues with [H.S.], so they said let's see what's the best way for mom to keep [H.S.]?  I know, I know what I'm going to do.  I'm going to talk about having a penis in my mouth at 9 and 10 years of age.  I know I'm going to talk about someone putting their penis in my bottom.  I know, I'm going to talk about having someone put their penis into the - - in the area where I go to the bathroom.  *Those are the types of lies that are typical of children of that age, aren't*

*they? Aren't they? Really?* In a nutshell, 45 minutes to get to that. That's what it took. That's what that just was. (Emphasis added.)

Appellant contends that by asking, "Those are the types of lies that are typical of children of that age, aren't they? Aren't they? Really?" the prosecutor improperly vouched for the children's testimony and personally attacked opposing counsel and his theory of the case by effectively telling the jury not to believe anything presented in appellant's defense.

**{¶ 50}** For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove that the prosecutor's comments were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27, citing *State v. Hill*, 75 Ohio St.3d 195, 203 (1996). "Prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial." *Id.*, citing *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

**{¶ 51}** At trial, appellant's counsel failed to object to the prosecutor's alleged improper statements. Accordingly, our review is limited to plain error. *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 33. Plain error exists where there is an obvious deviation from a legal rule that affected the outcome of the proceeding. Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Prosecutorial misconduct rises to the level of plain error if it is clear the defendant would not have been convicted in the absence of the improper comments." *Olvera-Guillen* at ¶ 33, citing *State v. Tumbleson*, 105 Ohio App.3d 693, 700 (12th Dist.1995).

**{¶ 52}** Having reviewed the prosecutor's closing argument, we find the prosecutor's statements to be proper. The remarks complained of by appellant were presented in the

form of a question to the jury, essentially asking the jurors to determine if they "really" found appellant's version of events credible or if they found the testimony of the two minor victims credible in light of the evidence presented. "A prosecutor does not express an opinion about witness credibility by asking jurors to decide for themselves whether the witnesses were being truthful." *Id.* at ¶ 37, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 235. "It is not improper to make comments in the context of explaining why a witness' testimony is or is not credible in light of the circumstances of the evidence, [where] the prosecutor neither implies knowledge of the facts outside the record nor places his or her personal credibility in issue by making such argument." *Id.*, citing *Davis* at ¶ 244-247. Here, the prosecutor merely referred to evidence contained in the record and asked the jury to determine whether such evidence was credible. The prosecutor did not improperly vouch for the minor victims by implying knowledge of facts outside the record or placing his personal credibility at issue. Furthermore, the prosecutor did not attack opposing counsel personally. Rather, the prosecutor's statements were limited to and directed at the evidence presented at trial, and how such evidence could be interpreted by the jury.

{¶ 53} Even if we assumed the prosecutor's statements were improper, we find that the outcome of the proceeding would not have been different absent such statements. In light of the evidence presented at trial, including the testimony of the minor victims, Rose, and Marion, appellant would have been convicted in the absence of the prosecutor's remarks.

{¶ 54} Appellant's third assignment of error is, therefore, overruled.

### D. Ineffective Assistance of Counsel

{¶ 55} Assignment of Error No. 4:

{¶ 56} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A

FAIR TRIAL.

{¶ 57} In his fourth assignment of error, appellant contends his trial counsel committed an array of errors which prejudiced his right to a fair trial. Specifically, appellant contends his trial counsel erred by failing to (1) challenge Marion's qualifications and diagnoses, (2) sufficiently cross-examine Rose, (3) impeach Li.R. and Lo.R., (4) object to the state's use of leading questions, and (5) adequately prepare for trial.

{¶ 58} To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that his trial counsel's performance was deficient and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 14. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

### 1. Testimony of Marion

{¶ 59} Appellant argues that his trial counsel was ineffective in a variety of ways for failing to object to Marion's testimony at trial. Appellant initially contends counsel was ineffective for failing to adequately question Marion about her qualifications to make the diagnosis that Li.R. and Lo.R. had been physically, sexually, and psychologically abused. He further contends his trial counsel should have retained a doctor to independently review Marion's findings to determine if the findings were medically supported.

{¶ 60} As an initial matter, we note that trial counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix,* 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. It is not the role of the appellate court to second guess the strategic decisions of trial counsel. *State v. Lloyd,* 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. "[T]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Murphy,* 12th Dist. Butler Nos. CA2009-05-128 and 2009-Ohio-6745, ¶ 32, citing *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 61} As discussed during our resolution of the second assignment of error, appellant's counsel was precluded by the trial court from cross-examining Marion about her qualifications. Counsel was not, however, precluded from questioning Marion about her ability to render a diagnosis, and the record demonstrates that counsel did, in fact, question Marion about the diagnosis she made in this case. Specifically, counsel questioned Marion about the amount of time she spent with the children, and whether such time was sufficient for her to render an opinion in the matter. Counsel also questioned Marion about whether her training in the area of sexual abuse was current so as to allow her to render a diagnosis in this case. As counsel did question Marion about her ability to render a diagnosis, we find that counsel's performance was not deficient in this instance. Further, as the scope of cross-examination falls within the ambit of trial strategy, we find that counsel's decision not to further cross-examine Marion as to her ability to render a diagnosis in the present case was reasonable. *See Murphy* at ¶ 32; *Strickland,* 466 U.S. at 688.

{¶ 62} Moreover, we find no merit to appellant's contention that his trial counsel was ineffective for failing to hire a doctor to independently review Marion's findings to see if her findings were medically supported. Not hiring a separate expert, and, instead, relying upon the cross-examination of a state's expert to rebut evidence of a crime is a legitimate trial

- 23 -

strategy. *See State v. Hendrix*, 12th Dist. Butler No. CA2000-03-054, 2001 WL 1078967, *3 (Sept. 17, 2001). "[S]uch a decision by trial counsel is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant" or render an opinion that substantiates and corroborates the findings of the state's expert. *Id. See also State v. Jones*, 10th Dist. Franklin No. 02AP-577, 2003-Ohio-952, ¶ 15.

**{¶ 63}** Finally, appellant argues his trial counsel was ineffective for failing to object to Marion's testimony about statements Li.R. and Lo.R made to her as such statements were not offered for the purpose of medical diagnosis or treatment. Appellant argues that by failing to object, his trial counsel permitted impermissible hearsay statements to be admitted at trial, including statements which implicated appellant as the perpetrator of his stepdaughters' abuse.

**{¶ 64}** Contrary to appellant's argument, the record reveals that his trial counsel did object to Marion's testimony on the basis that it contained impermissible hearsay statements by the children. The trial court overruled counsel's objection, finding that the statements were admissible under Evid.R. 803(4) as they were made for the purposes of medical diagnosis or treatment. Thereafter, the trial court granted defense counsel a continuing objection to such testimony.[6] As defense counsel did object to such testimony by Marion, we

6. **{¶ a}** The following discussion occurred at trial with respect to Marion's testimony:

> **{¶ b}** [DEFENSE COUNSEL]: I'm going to object to a portion of the answer that indicates that bad things at the hands of her stepfather. I think that her answer is appropriate up to the point of her stepfather. However, identifying a particular perpetrator is not necessary for medical diagnosis. Obviously, the other - - the other things discussed, you know, about pain, or where it hurt, or how it felt - - all those are necessary for a medical diagnosis and I think clearly come in. However, to extend it to a specific individual, I think - -
>
> **{¶ c}** [STATE]: I would disagree.
>
> **{¶ d}** DEFENSE COUNSEL]: - - goes beyond - - goes beyond the inherent credibility that we're looking for in terms of medical diagnosis.

find no merit to appellant's argument that his trial counsel was deficient for failing to object.

{¶ 65} We therefore conclude that defense counsel was not ineffective for failing to question Marion about her ability to make medical diagnoses, for not having her findings independently reviewed, or for "failing" to object to Marion's testimony about statements Lo.R. and Li.R. made to her that identified appellant as the perpetrator of the children's abuse.

2. Cross-Examination of Rose

{¶ 66} Appellant also asserts his trial counsel was ineffective for failing to cross-examine Rose about the seven-month lapse of time between the children's disclosure of abuse on October 31, 2011, and the time they sought treatment with Rose in May 2012. Appellant contends this lapse of time was crucial to his defense that "[M]other coached these children."

{¶ 67} The record discloses the seven-month lapse of time that occurred between the children's initial disclosure and their treatment with Rose. The jury heard Li.R. and Lo.R. testify that they disclosed the abuse on October 31, 2011. The jury also heard Rose testify

---

{¶ e}    * * *

{¶ f}    THE COURT:  The - - the Rule 803(4) is the exception, "statement made for the purposes of medical diagnosis or treatment."  And to me a course of treatment is clearly necessary to determine who the perpetrator is.  And clearly they're not going to take this diagnosis and not know who it is, and put them right back in the same environment for treatment.  * * * So, I'm going to overrule the objection and let them - - she can identify who the child noted.  I'm sure she's going to do that with [Li.R], and I'll just note for the record that you have a continuing objection to her testimony as to the identity of the perpetrator, and you'll not need to make that.  * * *

{¶ g}    [DEFENSE COUNSEL]:  An ongoing objection?

{¶ h}    [STATE]:  Yeah.

{¶ i}    THE COURT:  * * * [A]n ongoing objection to her testimony as to what the children told her based upon your objection at this point to, you know, the identity of the child [sic].

that she did not diagnostically test or begin treating Li.R. and Lo.R. for PTSD until May 2012. Defense counsel's decision not to further cross-examine Rose about this time-lapse falls within the realm of trial strategy, and we will not second guess trial counsel's strategic decision. *See Lloyd*, 2008-Ohio-3383 at ¶ 61.

**{¶ 68}** Additionally, we find that appellant's contention that he was prejudiced by his counsel's failure to cross-examine Rose on this issue to be without merit. Although appellant contends that the children were "coached" by Mother into making the abuse allegations during the seven-month time lapse, the record reveals that Lo.R. and Li.R.'s initial disclosure of abuse in October 2011 was substantially similar to their trial testimony.

**{¶ 69}** We, therefore, reject appellant's claim that his trial counsel was ineffective for not questioning Rose more thoroughly about the time-lapse between the children's disclosure and treatment.

### 3. Impeachment of Li.R. and Lo.R.

**{¶ 70}** Next, appellant argues his trial counsel was ineffective for failing to "follow through with important questions regarding the children to impeach their testimony." Appellant contends defense counsel was in possession of a video which could have been used to impeach Lo.R. and Li.R. by showing that they made prior inconsistent statements about the abuse.[7] Appellant does not provide any specific examples of how Li.R. and Lo.R.'s trial testimony was inconsistent with prior statements they made.

**{¶ 71}** The scope of cross-examination falls within the ambit of trial strategy. *Murphy*, 2009-Ohio-6745 at ¶ 32. Moreover, counsel's decisions regarding the presentation of evidence is within the realm of trial tactics. *State v. Edwards*, 12th Dist. Clermont CA97-04-

---

7. The only reference to a "video" occurs during a sidebar conference with the judge during cross-examination of Li.R. During this time, defense counsel indicated that he "probably will use" a "Mayerson" video to cross-examine Li.R. on some anticipated inconsistent statements.

035, 1998 WL 65685, *8 (Feb. 17, 1998). Here, appellant has not demonstrated how counsel's alleged errors in failing to play the video at trial or further question Li.R. and Lo.R. about prior statements they made were "so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. From the record, it is apparent that trial counsel did cross-examine each victim as to their specific abuse allegations, asking the children about the order of events leading up to the abuse, where the abuse occurred in the home, and whether anyone else was present in the home in an effort to impeach the children's testimony. Trial counsel's performance did not, therefore, fall below an objective standard of reasonableness. Thus, we conclude that appellant has failed to demonstrate that his trial counsel was ineffective for not impeaching Li.R. and Lo.R. with prior inconsistent statements.

### 4. Leading Questions

{¶ 72} Appellant also asserts his trial counsel was ineffective for failing to object to the "countless times" the prosecutor led the children and Marion through their testimony. He contends the children were improperly "led through questions about the time frame, spanking, nightmares, and the alleged abuse" and, without these leading questions, the jury would not have convicted him of the charged offenses.

{¶ 73} "It is within the trial court's discretion to allow leading questions on direct examination." *State v. Baird*, 12th Dist. Madison No. CA2003-09-034, 2004-Ohio-6664, ¶ 40, citing *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190 (1993). Moreover, trial counsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection. *State v. Steele*, 12th Dist. Butler No. CA2003-11-276, 2005-Ohio-943, ¶ 100. "Objections tend to disrupt the flow of a trial and are considered technical and bothersome by a jury." *Id.*, citing *State v. Hill*, 75 Ohio St.3d 195, 211 (1996).

{¶ 74} Accordingly, the absence of objections when the prosecutor posed leading

questions was a strategic choice by counsel. We therefore find that appellant has failed to demonstrate counsel was deficient for failing to object to the leading questions posed to Li.R., Lo.R., and Marion.

### 5. Preparation for Trial

{¶ 75} Finally, appellant contends he received ineffective assistance as his trial counsel was unprepared for trial. Appellant does not cite to any specific examples of counsel's alleged unpreparedness, but rather makes the broad assertion that counsel "did not ask important questions or * * * otherwise prepare for the testimony from the State's witnesses or even his own."

{¶ 76} Having reviewed the record, we find no merit to appellant's argument. Appellant's complaint that counsel failed to ask "important questions" or "prepare" for witnesses' testimony are claims that involve trial tactics employed by counsel. "[T]he end result of tactical trial decisions need not be positive in order for counsel to be considered 'effective.'" *State v. Awkal*, 76 Ohio St.3d 324, 337 (1996). Further, appellant has not demonstrated how he was prejudiced or how the outcome of trial would have been different had counsel "prepared' or asked the "important questions."

{¶ 77} As appellant has not demonstrated how any of the complained of actions by his trial counsel were so serious as to deprive appellant of a fair trial, we reject his argument that he received ineffective assistance of counsel.

{¶ 78} Appellant's fourth assignment of error is, therefore, overruled.

### E. Sufficiency and Manifest Weight

{¶ 79} Assignment of Error No. 5:

{¶ 80} THE EVIDENCE WAS INSUFFICIENT AS A MATER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.

{¶ 81} In his fifth assignment of error, appellant argues his convictions for rape, felonious assault, and disseminating matter harmful to juveniles were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 82} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 83} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State*

*v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

## 1. Rape

{¶ 84} Appellant argues the state failed to prove he engaged in sexual conduct with Li.R. and Lo.R, as the state failed to introduce evidence of penetration. He also contends there is no physical evidence linking him to the rape of Li.R. and Lo.R., and that the allegations of rape stem from Mother's "coaching" of the children to have them fabricate the abuse so that Mother could obtain custody of H.S.

{¶ 85} Appellant was convicted on six counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 86} After reviewing the entire record, weighing inferences, and examining the credibility of witnesses, we find that appellant's convictions for rape were not against the manifest weight of the evidence and were supported by sufficient evidence. The state

presented testimony and evidence from which the jury could have found all the elements of rape, including the challenged "penetration" element, proven beyond a reasonable doubt.

{¶ 87} With respect to the three rape counts relating to Lo.R., Lo.R. testified at trial that she was currently 12 years old and had never been married to appellant. She also testified appellant forced her to engage in fellatio and he anally raped her on two separate occasions. Specifically, Lo.R. stated she had to suck appellant's penis by going "up and down" on it. She described appellant ejaculating into her mouth, saying that "white stuff came out * * * [o]f his private" and it "yucky," "nasty," and tasted like "clumpy milk." She testified that on one occasion appellant made her get on her hands and knees and he used a lubricant, or something "sticky," on his penis to "make it fit" in her bottom. Lo.R. described another time when appellant shoved a sock in her mouth and forced her to hold onto the bars on the footboard of the bed while he put his penis in her bottom. Lo.R. specifically stated appellant was able to put "more" of his penis into her bottom on this occasion then he had in the past. Such testimony is evidence of penetration.

{¶ 88} With respect to the three rape counts relating to Li.R., Li.R. testified at trial she was born on April 17, 2002, and she had never been married to appellant. She further testified appellant forced her to engage in fellatio and he anally and vaginally raped her. Li.R. stated appellant forced her to touch his penis with her hands and mouth. After she put her hands around his penis and "shook it" she had to put her mouth on his penis and suck until "white stuff came out." She stated that the "white stuff" looked "like yogurt." She also testified appellant called her into the master bedroom where he forced her to bend over so that he could put his penis in her butt and in her "potty area." She testified appellant used a cream to make his penis fit. Again, such testimony is evidence of penetration.

{¶ 89} Li.R. and Lo.R.'s testimony was corroborated by Marion's findings during her examination of the children. Marion testified during her pre-medical interview of Lo.R. and

Li.R., both girls described instances of physical and sexual abuse. Lo.R. had disclosed that appellant had anally raped her and forced her to perform oral sex. Li.R. had described appellant putting his private in her "front" and in her bottom. Moreover, both girls had demonstrated sexual knowledge beyond their years, describing ejaculation, French kissing, lubricant, and "humping." Finally, during Marion's physical examination of Lo.R. and Li.R., she observed flattening of the rugae around each child's anus, which Marion testified was consistent with a large object entering the anal cavity.

{¶ 90} Appellant argues the flattening of the rugae can be attributed other events, including constipation, and it is not proof that he anally raped Lo.R. and Li.R. He further argues that as Marion's physical examination revealed no abnormalities in the children's vaginas and the search of his home yielded no bodily fluids, there is no evidence connecting him to the rape offenses. He contends the children's allegations were nothing more than fabrications arising out of Mother's manipulations in an effort to keep custody of her youngest daughter, H.S. Appellant claims the children's abuse allegations are "extremely suspicious" given that the allegations were not disclosed until Mother and appellant were in the middle of a custody dispute over H.S.

{¶ 91} "Although a reviewing court looks at the record anew when considering whether a verdict at trial is against the manifest weight of evidence, the trier of fact, not the appellate court, is in the best position to evaluate testimony and determine the credibility of witnesses." *State v. Thomas*, 12th Dist. Clinton No. CA2003-10-025, 2004-Ohio-6244, ¶ 12. Here, the jury found Li.R. and Lo.R.'s testimony credible and chose to believe their version of events over appellant's proffered version. It is well-established that when "conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 35.

{¶ 92} Accordingly, we find appellant's convictions for rape were not against the manifest weight of the evidence and were, therefore, also supported by sufficient evidence. *See Jones*, 2013-Ohio-150 at ¶ 19.

## 2. Felonious Assault

{¶ 93} Appellant also challenges his convictions for felonious assault, arguing the state failed to prove he caused "serious physical harm" to Li.R. and Lo.R. In support of his position that the children did not suffer serious physical harm, appellant relies on the fact that neither Li.R. or Lo.R. were hospitalized, prescribed medication, or saw a "psychiatrist." He further argues that because the children were not diagnosed as suffering from PTSD until seven or more months after the abuse ended, it "is questionable whether the children's alleged PTSD was at the hands of [a]ppellant" or resulted from their time with Mother.

{¶ 94} Appellant was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn." Serious physical harm is defined as "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." R.C. 2901.01(A)(5)(a).

{¶ 95} Contrary to appellant's arguments, the state presented evidence at trial to allow the jury to conclude appellant's sexual abuse of the children caused them serious physical harm. While the children were not hospitalized as a result of appellant's abuse, the jury heard testimony that appellant's physical and sexual abuse of the children caused them to suffer from the mental condition PTSD. Rose specifically testified appellant's physical and sexual abuse of Lo.R. and Li.R. caused the children to experience psychological disturbances and impairments that affected nearly every aspect of their life. She further testified the children had undergone psychotherapy treatment with a psychotherapist for more than ten months to treat their PTSD. That Li.R. and Lo.R. did not undergo diagnostic

testing or receive treatment for their PTSD until seven months after the initial disclosure of the abuse was a fact presented to the jury.  The jury had the ability to consider and weigh this evidence when deciding whether appellant knowingly caused Li.R. and Lo.R serious physical harm.  The fact that the jury chose to believe the prosecution testimony over appellant's version of events does not mean that appellant's convictions were against the manifest weight.  *See Williams* at ¶ 35.

**{¶ 96}** Accordingly, we find that appellant's convictions for felonious assault were not against the manifest weight of the evidence and were, therefore, also supported by sufficient evidence.  *See Jones*, 2013-Ohio-150 at ¶ 19.

3. Disseminating Matter Harmful to Juveniles

**{¶ 97}** Finally, appellant challenges his conviction for disseminating matter harmful to juveniles, a felony of the fourth degree, arguing the state failed to prove that any pornography was actually viewed on the recovered laptop or that appellant was the individual who showed the pornography to Li.R. and Lo.R.

**{¶ 98}** Appellant was convicted on one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1), which provides that "[n]o person, with knowledge of its character or content, shall recklessly * * * [d]irectly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles."  Pursuant to R.C. 2907.31(F), if the material disseminated or presented to the juvenile is obscene, as opposed to merely harmful, and if the victim is less than 13 years of age, the violation of R.C. 2907.31 is a felony of the fourth degree. Material or a performance is considered "obscene" if any of the following apply:

> (1) Its dominant appeal is to prurient interest;
>
> (2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere

objects of sexual appetite;

(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality; * * *

R.C. 2907.01(F).

{¶ 99} After reviewing the record, we find appellant's conviction for disseminating matter harmful to juveniles was not against the manifest weight of the evidence and was supported by sufficient evidence. The state presented testimony and evidence from which the jury could have found all the elements of the offense proven beyond a reasonable doubt. Specifically, the jury heard testimony from both Li.R. and Lo.R. that appellant showed them videos on a laptop of a man's penis sticking through a hole in the wall and a woman standing on the other side of the wall near the hole, preparing to masturbate and perform oral sex on the penis. Lo.R. testified the woman standing by the hole tried to "put her private onto it" and "suck on" the penis sticking out of the hole. Similarly, Lo.R. testified that there was a girl "touching it [the private] and doing stuff to it. * * * Like rubbing it, like putting it in her mouth."

{¶ 100} Lo.R. and Li.R.'s testimony was corroborated by the findings of Ruebusch, who testified that during an examination of the laptop seized form appellant's home he found numerous references to a website about "glory holes." Ruebusch testified he recovered an image from July 29, 2011, on the laptop which depicted a video of a penis sticking through a hole in a wall and a naked female preparing to engage in fellatio on the other side of the wall. While Ruebusch could not definitively say the video had been viewed, he testified that a search of appellant's hard drive revealed numerous references to "glory holes" and indicated that various "glory hole" videos and stories about incest had been accessed on the computer. Furthermore, while Ruebusch could not definitively say appellant was the specific individual who accessed the "glory hole" website on July 29, 2011 at 1:12 a.m., he opined that the same person who visited the "glory holes" website had also emailed a student schedule

belonging to "Jason Setty" to the email account for "JSetty1985" at 12:20 a.m., had searched for a china cap cooking instrument around 1:36 a.m., and had purchased a china cap strainer, which was being "shipped to" and "billed to" "Jason Setty," around 1:53 a.m. on July 29, 2011.

{¶ 101} Ruebusch's testimony, taken in combination with Li.R. and Lo.R.'s testimony, was sufficient to allow the jury to conclude that appellant recklessly presented obscene material to Lo.R. and Li.R., minors under the age of 13. We therefore find that appellant's conviction for disseminating matter harmful to juveniles was not against the manifest weight of the evidence and was supported by sufficient evidence. *See Jones*, 2013-Ohio-150 at ¶ 19.

{¶ 102} Accordingly, appellant's fifth assignment of error is overruled.

### F. Sentencing

{¶ 103} Assignment of Error No. 6:

{¶ 104} THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT.

{¶ 105} In his sixth assignment of error, appellant argues the trial court committed several errors in imposing his sentence. Appellant contends the trial court failed to consider the principles and purposes of sentencing set forth in R.C. 2929.11 and R.C. 2929.12 and failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences. He further contends the trial court erred by imposing life without parole on the rape counts involving Lo.R., as the requirements of R.C. 2907.02(B) were not met. Finally, appellant argues the trial court erred by failing to inform him that he would not be eligible for earned days of credit based upon his conviction.

{¶ 106} As previously stated, appellant was sentenced to life without parole on the three rape convictions relating to Li.R. and on the three rape convictions relating to Lo.R.

The three rape sentences relating to Li.R. were ordered concurrent to one another, and the three rape sentences relating to Lo.R. were ordered concurrent to one another, but consecutive to the sentences against Li.R. Appellant was sentenced to 8 years imprisonment for the attempted rape of Lo.R., which was run consecutively to his sentence on the rape convictions. He received an 18-month prison sentence for disseminating matter harmful to juveniles, which was run consecutively to the rape and attempted rape sentences. Appellant did not receive a sentence on his convictions for sexual battery and felonious assault, as the trial court found the convictions constituted allied offenses of similar import and merged such offenses with his rape convictions.

{¶ 107} We review the imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. "When considering an appeal of a trial court's felony sentencing decision under R.C. 2953.08(G)(2), '[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.'" *Id.* at ¶ 7, quoting R.C. 2953.08(G)(2). However, an appellate court's review of an imposed sentence is not whether the sentencing court abused its discretion. *Id.*; *State v. Warren*, 12th Dist. Clermont No. CA2012-12-087, 2013-Ohio-3483, ¶ 6. Rather, an appellate court may take any action authorized by R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;" or (2) "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). An appellate court will not find a sentence clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C.

2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *Warren* at ¶ 7; *State v. Sturgill*, 12th Dist. Clermont Nos. CA2013-01-002 and CA2013-01-003, 2013-Ohio-4648, ¶ 37.

### 1. Principles and Purposes of Sentencing

{¶ 108} Appellant contends the trial court failed to consider the principles and purposes of sentencing before imposing "significant, consecutive prison sentences." Specifically, appellant contends the trial court failed to consider the factors set forth in R.C. 2929.11(B) and R.C. 2929.12(A)-(E).

{¶ 109} Contrary to appellant's claim, the judgment entry of conviction specifically states that the trial court considered "the purposes and principles of sentencing under R.C. 2929.11 and R.C. 2929.12." Furthermore, the record of appellant's sentencing hearing demonstrates the trial court gave careful and substantial deliberation to the sentencing provisions prior to imposing appellant's sentence. The trial court discussed appellant's criminal history, which included a delinquency adjudication for the rape of his 12-year-old brother when appellant was 16 years old, and the fact that treatment did not rehabilitate or prevent appellant from abusing other children. The court considered the need to protect the public from appellant, concluding that "society absolutely needs to be protected" from appellant for the rest of his life. The court also considered the serious mental and psychological harm caused to Li.R. and Lo.R., and specifically found that the offenses committed against the minor victims were the "most serious of offenses." The trial court further discussed appellant's lack of remorse for the crimes and his assertions that he was found guilty only because the state, Mother, the children, and Rose lied and conspired with one another to convict him of the offenses.

{¶ 110} Given the foregoing considerations by the trial court, and the language utilized by the court in its sentencing entry, we find that the trial court clearly considered the purposes

- 38 -

and principles of sentencing under R.C. 2929.11 and R.C. 2929.12 prior to imposing appellant's sentence.

### 2. Consecutive Sentences

{¶ 111}  Next, appellant argues the trial court erred by failing to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences.  We disagree.

{¶ 112}  Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences.  *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9.  First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender.  R.C. 2929.14(C)(4).  Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.  *Id.*  Third, the trial court must find that one of the following applies:

> (a)  The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c)  The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 113}  "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected

- 39 -

the appropriate statutory criteria." *Sturgill*, 2013-Ohio-4648 at ¶ 48, citing *State v. Smith*, 12th Dist. Clermont No. CA2012-01-004, 2012-Ohio-4523, ¶ 26. In imposing consecutive sentences, "the trial court is not required to state any talismanic language" or otherwise give reasons explaining its findings. *Id.*; *State v. Oren*, 12th Dist. Madison No. CA2012-05-010, 2013-Ohio-531, ¶ 25. Nevertheless, the record must reflect that the court made the requisite findings. *Id.*

{¶ 114} Here, the record reflects that the trial court made the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences. Specifically, the trial court stated that consecutive sentences were necessary to protect the public from future crime by appellant. The trial court also found that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and that his course of conduct caused such harm to Lo.R. and Li.R. that no single prison term adequately reflected the seriousness of his conduct. Specifically, the trial court stated:

> THE COURT: [T]hese are multiple offenses. They're multiple victims. You should not get a free pass simply because there were two victims. Each victim deserves to be - - to have justice for the crimes that were committed against them as well. And it clearly is not disproportionate to the nature of the offenses.
>
> I truly believe that a single sentence - - even though it's life without parole, would diminish the seriousness of each offense as to each separate victim in this case, and consequently these will be served - - the groups, if you will, will be served consecutively to one another. * * *

The trial court later memorialized these findings within its sentencing entry.

{¶ 115} From the trial court's statements at the sentencing hearing and the language utilized in the sentencing entry, it is clear that the trial court complied with the dictates of R.C. 2929.14(C)(4). *See Crawford*, 2013-Ohio-3315 at ¶ 17; *Sturgill* at ¶ 50. The trial court, therefore, did not err by imposing consecutive sentences in this matter.

3. Permissible Statutory Range: Life without Parole for Rape of Lo.R.

{¶ 116} Appellant also argues the trial court erred by imposing life without parole on the rape counts involving Lo.R., as the requirements of R.C. 2907.02(B) were not met. Specifically, appellant contends he could not be sentenced to life without parole for the rape of Lo.R. as Lo.R. was not less than ten years old at the time of the rapes, he had not been previously convicted of raping a person less than 13 years of age, and there was "no allegation that he caused serious physical harm to Lo.R. during or immediately after the commission of the offense."

{¶ 117} A defendant who is convicted under R.C. 2907.02(A)(1)(b) for the rape of a person under age 13 is guilty of a first-degree felony and shall be sentenced as follows:

> Except as otherwise provided in this division, notwithstanding [R.C. 2929.11 to R.C. 2929.14], an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or a term of life imprisonment pursuant to [R.C. 2971.03]. * * * *If an offender under division (A)(1)(b) of this section previously has been convicted or pleaded guilty to violating division (A)(1)(b) of this section or to violating an existing or former law of this state, another state, or the United States that is substantially similar to division (A)(1)(b) of this section, if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, or if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to [R.C. 2971.03], the court may impose upon the offender a term of life imprisonment without parole.*

(Emphasis added.) R.C. 2907.02(B). Or, stated another way, a defendant may be sentenced to life without parole under R.C. 2907.02(B) if convicted of violating R.C. 2907.02(A)(1)(b) and one of the following applies: (1) the defendant was previously convicted or pleaded guilty to raping a person under the age of 13; (2) the defendant caused serious physical harm to the victim, who was less than 13 years of age, during or immediately after the rape; or (3) the defendant raped a victim who was less than ten years of age. If none of the above apply, the defendant shall be sentenced in accordance with R.C. 2971.03 to a prison term or a term of life. R.C. 2971.03(B)(1) provides:

[I]f a person is convicted of or pleads guilty to a violation of [R.C. 2907.02(A)(1)(b)] * * * and if the court does not impose a sentence of life without parole when authorized pursuant to [R.C. 2907.02(B)], the court shall impose upon the person an indefinite prison term consisting of one of the following:

(a) Except as otherwise required in division (B)(1)(b) or (c) of this section, a minimum term of ten years and a maximum term of life imprisonment.

(b) If the victim was less than ten years of age, a minimum term of fifteen years and a maximum of life imprisonment.

(c) If the offender purposely compels the victim to submit by force or threat of force, or if the offender previously has been convicted of or pleaded guilty to violating [R.C. 2907.02(A)(1)(b)] or to violating an existing or former law of this state, another state, or the United States that is substantially similar to [R.C. 2907.02(A)(1)(b)], or if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, a minimum term of twenty-five years and a maximum of life imprisonment.

The maximum sentence a defendant may receive pursuant to R.C. 2971.03(B)(1) is, therefore, life imprisonment with the possibility of parole.

{¶ 117} In the indictment for Case No. 2012-CR-0068, the rape counts relating to Lo.R. do not contain a specification that Lo.R. was less than ten years old at the time of the offense, that appellant has previously been convicted or pleaded guilty to the rape of a minor under age 13, or that appellant caused serious physical harm to Lo.R. during or immediately after the rapes. Furthermore, the verdict forms finding appellant guilty of raping Lo.R. in counts four through six of Case No. 2012-CR-0068 were general verdict forms finding appellant "guilty of the offense of Rape, Section R.C. 2907.02(A)(1)(b) of the Ohio Revised Code, as to Lo.R. who was more than 10 years of age but less than thirteen years of age." Nonetheless, the trial court, at the sentencing hearing and in its sentencing entry, specifically found appellant caused serious physical harm to Lo.R. during the course of the rapes and

imposed a sentence of life without parole on counts four through six.[8]

{¶ 118} On appeal, the state contends that the trial court's actions were proper given the jury's guilty verdict on the felonious assault conviction. The state argues the jury's finding that appellant caused serious physical harm in the course of committing the felonious assault against Lo.R. in Case No. 2012-CR-0731 can be used to enhance the penalty on his rape convictions in Case No. 2012-CR-0068 to life without parole. The state contends Lo.R.'s diagnosis of PTSD and her ongoing therapy treatments were sufficient proof that appellant caused Lo.R. serious physical harm during or immediately after the rapes, and that the trial court was, therefore, entitled to impose a prison sentence of life without parole. We find no merit to the state's argument.

{¶ 119} "It is well established that each count of an indictment charges a complete offense; the separate counts of an indictment are not interdependent but are, and necessarily must be, each complete in itself." *State v. Curran*, 166 Ohio App.3d 206, 2006-Ohio-773, ¶ 24 (2d Dist.), citing *State v. Lovejoy*, 79 Ohio St.3d 440, 446 (1997). "A verdict responding to a designated count will be construed in the light of the count designated, and no other." *Browning v. State*, 120 Ohio St. 62 (1929), paragraph four of the syllabus. Just as a verdict on one count of an indictment cannot be used to construe a separate count within the same indictment, a verdict on a count in a *separate* indictment cannot be used to construe a count in a *separate* indictment. Accordingly, the fact that the jury found appellant "caused serious physical harm" in the course of committing a felonious assault in Case No. 2012-CR-0731 does not mean that the jury would have, or did in fact, find that appellant "caused serious

---

8. {¶ a} At the sentencing hearing, the trial court made the following statement with respect to rape convictions involving Lo.R.:

{¶ b} THE COURT: As to [Lo.R.] in Counts 4, 5, and 6, she suffered serious physical harm. I believe the statute provides the option there as well that the serious physical harm was caused during your ongoing sexual abuse of [Lo.R.], and it will be life without parole on those three as well. * * *

physical harm" to Lo.R. during or immediately after the commission of the rapes in Case No. 2012-CR-0068.[9] As previously mentioned, the verdict forms submitted to the jury on counts four through six were general verdict forms asking the jury to determine appellant's guilt or innocence. The forms did not require the jury to determine whether appellant caused Lo.R. serious physical harm during or immediately after the commission of the rape offenses.[10] As the jury did not specifically find appellant caused Lo.R. serious physical harm during or immediately after the commission of the rapes, appellant could not be sentenced to life without parole pursuant to R.C. 2907.02(B).

{¶ 120} We further find that the trial court's statement in its sentencing entry and its determination at the sentencing hearing that appellant caused Lo.R. "serious physical harm" during the course of the rapes was an improper basis to enhance the penalty on counts four through six. While the trial court unquestionably believed appellant caused Lo.R. serious physical harm during the course of the rapes, the trial court was not permitted to make this additional finding, independent from the jury, to enhance the statutory maximum penalty

---

9. {¶ a} The jury was specifically instructed by the trial court as follows:

> {¶ b} THE COURT: The charges set forth in both 2012-CR-68 and 2012-CR constitute - - excuse me - - 2012-CR-731 constitute a separate and distinct matter. You must consider each count and each indictment and the evidence applicable to each count separately, and you must state your findings as to each count uninfluenced by your verdict as to any other count in each indictment.

> {¶ c} * * *

> {¶ d} Again, the charges set forth in each Count constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your findings as to each count again uninfluenced by your verdict as to the other counts.

10. Compare the present case with *State v. Alvarado*, 3d Dist. Putnam No. 12-07-14, 2008-Ohio-4411 (holding that a defendant's sentence of life without parole was proper where appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) and the specification that the defendant caused serious physical harm to the victim) and *State v. Hardie*, 4th Dist. Washington No. 06CA37, 2007-Ohio-2755 (holding that a defendant's sentence of life without parole was constitutional as the defendant pleaded guilty to rape in violation of R.C. 2907.02(A)(1)(b) and the accompanying specification that he caused serious physical harm to his victim).

permitted by R.C. 2907.02(B). *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004).

{¶ 121} In *Apprendi*, the United States Supreme Court held that the Sixth and Fourteenth Amendments to the United States Constitution require that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (Emphasis sic.) *Blakely* at 303. "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' * * * and the judge exceeds his proper authority." (Emphasis sic.) *Id.* at 303-304. As the maximum penalty permitted under R.C. 2907.02(B) and R.C. 2971.03(B)(1) for a violation of R.C. 2907.01(A)(1)(b), without any additional findings, was a term of life imprisonment, we find that the trial court's sentence of life without parole on counts four through six was contrary to law.[11]

{¶ 122} We find this portion of appellant's sixth assignment of error to be well-taken, and therefore sustain appellant's sixth assignment of error to the extent the trial court erred in sentencing appellant to life without parole on counts four, five and six in Case No. 2012-CR-

---

11. As the judgment entry sentencing appellant on counts four through six specifically reflects the trial court's intent to impose life without parole on the basis that appellant caused "serious physical harm" to Lo.R. during or immediately after committing the rapes, we need not address whether the "under 10 years of age" or the "prior convictions" provision of R.C. 2907.02(B) could be used to enhance appellant's sentence. The state has not argued that either of these provisions support the trial court's imposition of life without parole on counts four through six. Moreover, the indictment did not contain an allegation specifying that Lo.R. was less than 10 years-old at the time of the offenses or that appellant had previously been convicted or pleaded guilty to the rape of a minor under age 13 and the verdict forms did not contain such findings by the jury.

0068. We reverse the sentence on counts four, five, and six and remand the matter for resentencing. On remand, the trial court is instructed to sentence appellant on those counts in accordance with R.C. 2907.03(B)(1), where the maximum penalty authorized under the specific facts and circumstances of this case is life imprisonment. In all other respects the sentence imposed by the trial court is affirmed.

### 4. Earned Days of Credit

{¶ 123} Finally, appellant argues the trial court erred by failing to inform him he was not eligible for earned days of credit based upon his conviction. Appellant cites no authority in support of his argument.

{¶ 124} We find no merit to appellant's argument. Pursuant to R.C. 2967.193(C), appellant was not eligible for earned credit towards an early release from prison. There is no requirement in R.C. 2967.193, or any other statute, that appellant be advised of his ineligibility for earned credit. Appellant's argument is, therefore, rejected.

{¶ 125} For the reasons set forth above, appellant's sixth assignment of error is sustained in part and overruled in part.

### III. CONCLUSION

{¶ 126} Judgment is affirmed in part, reversed in part, and the matter is remanded for the limited purpose of resentencing.

RINGLAND, P.J., and M. POWELL, J., concur.